Connie GARRETT, minor, by her Guardian ad Litem, Stephen E. Kravit and Paul Helders, Plaintiffs-Appellants,

Raymond M. GARRETT and Cecilia Helders, Plaintiffs,

v.

CITY OF NEW BERLIN, Sentry Insurance, a mutual company, Patricia A. Barnes, d/b/a The 15 Outdoor Theater and Maryland Casualty Company, Defendants-Respondents,

WISCONSIN EMPLOYERS INSURANCE COMPANY, Subrogee.

Supreme Court

*No. 84–157. Argued October 29, 1984.—Decided February 6, 1985.*

(Also reported in 362 N.W.2d 137.)

224

For the plaintiffs-appellants there were briefs by *Stephen E. Kravit, Michael B. Apfeld* and *Godfrey & Kahn, S.C.*, Milwaukee, and oral argument by *Mr. Kravit*.

For the plaintiff-appellant, Paul Helders, and plaintiff, Cecilia Helders, there was a brief by *James T. Murray, Jr., Randy S. Parlee* and *Peterson, Johnson & Murray, S.C.*, Milwaukee.

For defendants-respondents, City of New Berlin and Sentry Insurance Company, there was a brief by *Joseph D. McDevitt* and *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

For defendants-respondents, Patricia A. Barnes and Maryland Casualty Company, there was a brief by *Brian J. Henderson, Michael J. Hogan* and *Riordan, Crivello, Carlson, Mentkowski & Henderson*, Milwaukee, and oral argument by *Brian J. Henderson*.

WILLIAM G. CALLOW, J. This is an appeal from a judgment of the circuit court for Waukesha county granting summary judgment which dismissed plaintiff Connie Garrett's claim for negligent infliction of emotional dis-

tress and which also dismissed plaintiff Paul Helders' claim for loss of services, society and companionship and medical expenses paid on behalf of Raymond Garrett. Connie Garrett and Paul Helders appealed, and a joint petition to bypass the court of appeals, pursuant to sec. 808.05 and sec. (Rule) 809.60, Stats., was filed. We granted the joint petition to bypass. We affirm the judgment of the circuit court in part, reverse in part, and remand the cause for further proceedings.

The issues presented on appeal are whether a plaintiff not within the field of danger may recover for negligent infliction of emotional distress resulting from witnessing a sibling being injured in an accident and whether a person who is not a natural or adoptive parent, but rather stands in *loco parentis* to a child, may recover for loss of services, society and companionship, and medical expenses as a result of injuries sustained by the child.

On September 5, 1981, between 10:30 and 11 p.m., Raymond Garrett, thirteen years of age, and his sister Connie Garrett, fourteen years of age, along with a number of other young people, were on the edge of The 15 Outdoor Theater premises in New Berlin, Wisconsin, watching a movie. Connie was leaning against a fence at the edge of the theater premises. Raymond was about 15 feet away, lying on a blanket near a gravel driveway.

At about 10:45 p.m., a squad car driven by a city of New Berlin police officer entered the theater premises through the exit with its headlights extinguished. The officer swept the fence area with his spotlight and accelerated the car in pursuit of the children he had observed. The officer, driving without lights, ran over Raymond, causing him severe and permanent injuries.

Connie saw the squad car run over Raymond. The car was never closer to her than 15 or 20 feet. She ran over to where Raymond was lying, saw his twisted and bloody legs, and became emotionally distressed. Connie sus-

tained no direct physical injuries as a result of the collision and never feared for her own safety.

On April 7, 1982, Raymond and Connie, along with their mother and stepfather, Cecilia and Paul Helders, brought suit in Waukesha county circuit court against the city of New Berlin, Patricia Barnes, the owner of the theater, and their respective insurers. An amended summons and complaint were filed on August 11, 1982.

In the complaint, Connie sought recovery for severe emotional shock and distress suffered as a result of witnessing the injury to her brother. In her deposition, Connie's testimony concerning her immediate post-accident behavior evidenced a state of hysteria. In addition, she claimed she later suffered other psychological and physical problems including insomnia, disruption of her relationship with her family, lowering of her grades in school, and deterioration of her self-image.

Paul Helders, Raymond's stepfather, sought recovery for loss of Raymond's services, loss of society and companionship, and past and future medical expenses. Helders had not adopted Raymond or Connie but did provide financial support for them, supplementing the $200 monthly support paid by the children's natural father. Raymond saw his natural father once a year or less. Helders had known Raymond since he was two years of age and had been his stepfather for about ten years. Helders carried medical insurance on Raymond through his place of employment. Cecilia and Paul Helders separated in February of 1983, and Helders continued to maintain visitation with Raymond.

In May of 1983, all defendants moved for summary judgment on Connie Garrett's and Paul Helders' claims. The trial court granted summary judgment on both claims. With respect to Connie Garrett's claim, the court found that, since she was not within the field of danger at the time of the accident, she could not recover for

emotional distress suffered as a result of witnessing the accident. The court also stated that the record demonstrated that Connie had sustained no physical injury accompanying her claim for emotional injury. With respect to Paul Helders' claim, the court found that a stepfather was not entitled to recover for medical expenses or loss of services or society and companionship of a stepchild.

In reviewing a trial court's grant of summary judgment, this court must apply the standards set forth in sec. 802.08(2), Stats.,[1] in the same manner as the trial court. *Kremers-Urban Co. v. American Employers Insurance Co.,* 119 Wis. 2d 722, 733, 351 N.W.2d 156 (1984). On summary judgment the moving party has the burden to establish the absence of a genuine issue as to any material fact. The court on summary judgment does not decide the issue of material fact but decides whether there is a genuine issue of fact in dispute. *Poynter v. Johnston,* 114 Wis. 2d 439, 446, 338 N.W.2d 484 (1983); *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). This court must reverse the grant of summary judgment if it finds that the trial court erred in determining that there is no genuine issue as to any material fact. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676 (1979). Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment. *Grams v. Boss,* 97 Wis. 2d at 338–339.

The first issue before the court is whether a person who is not within the field of danger may recover for

---

[1] "The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

negligent infliction of emotional distress resulting from witnessing a sibling being injured in an accident. Courts have historically allowed plaintiffs to maintain a cause of action for emotional distress only if certain limiting and qualifying factors were present. Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort,* 59 Geo. L.J. 1237, 1238 (1971). Early cases denied plaintiffs recovery unless the plaintiff had suffered a contemporaneous physical injury or impact accompanied by mental distress. *Id.* at 1239. The majority of courts gradually departed from the impact rule and permitted a cause of action for the negligent infliction of emotional distress if the claimant could establish that he or she met certain other criteria. Note, *Negligent Infliction of Emotional Distress: Keeping Dillon in Bounds,* 37 Wash. & Lee L. Rev. 1235, 1237 (1980).

The parties have framed this issue as a choice between the rule of law adopted by this court in *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935), and a foreseeability test which has been adopted by some other courts. In *Waube* we set forth a rule governing a claim for compensatory damages for alleged negligent infliction of emotional distress by a witness to an accident. The plaintiff in *Waube* was a mother who was looking out the window of her house watching her child cross the highway when she saw an automobile strike and kill the child. As a result of witnessing the accident, Mrs. Waube " 'became extremely hysterical, sick, and prostrated through fright, shock, and excessive sudden emotional disturbances,' " *id.* at 604, and died two weeks later. Her husband brought an action to recover for her death. The court refused to allow such a cause of action. Justice Wickhem explained the reasons for reaching this result as follows:

". . . It is one thing to say that as to those who are put in peril of physical impact, impact is immaterial if

physical injury is caused by shock arising from the peril. . . . It is quite another thing to say that those who are out of the field of physical danger through impact shall have a legally protected right to be free from emotional distress occasioned by the peril of others, when that distress results in physical impairment. . . . The answer must be reached by balancing the social interests involved in order to ascertain how far defendant's duty and plaintiff's right may justly and expediently be extended. It is our conclusion that they can neither justly nor expediently be extended to any recovery for physical injuries sustained by one out of the range of ordinary physical peril as a result of the shock of witnessing another's danger. Such consequences are so unusual and extraordinary, viewed after the event, that a user of the highway may be said not to subject others to an unreasonable risk of them by the careless management of his vehicle. Furthermore, the liability imposed by such a doctrine is wholly out of proportion to the culpability of the negligent tort-feasor, would put an unreasonable burden upon users of the highway, open the way to fraudulent claims, and enter a field that has no sensible or just stopping point." *Id.* at 612–13.

We expanded upon the field of danger requirement in *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956). In *Klassa* defendant's employees negligently caused a minor explosion in the basement of plaintiff's home while installing a gas pressure regulator. Plaintiff's children were in the basement at the time but were unhurt. The plaintiff sought recovery for the shock and fright she experienced due to her apprehension for her sons' safety. In *Klassa* we held that, in order to recover for emotional distress, a person must not only be within the range of ordinary physical peril but must actually be in fear for his or her own safety.

"[E]ven though the person sustaining the shock were within the field of potential danger, if the shock was solely the result of fear for another's safety, the . . . stated policy reasons in the *Waube Case* opinion for holding nonliability would be applicable. . . . [W]e consider

it to be the better policy to deny recovery in all cases where the physical injuries are *solely* caused by shock or fright resulting from fear for another's safety where there was no physical impact to the person for whose injuries recovery of damages is sought." *Id.* at 187 (emphasis in original).

In addition to the requirement that the plaintiff be within the field of danger and fear for his or her own safety, this court has also established an additional criterion which must be met before recovery for emotional distress will be allowed: The plaintiff's emotional distress must be manifested by physical injury. *Ver Hagen v. Gibbons*, 47 Wis. 2d 220, 227, 177 N.W.2d 83 (1970).

Connie Garrett urges us to abandon the *Waube* field of danger rule and to replace it with a foreseeability test. The leading case adopting such a test was *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912 (1968). In *Dillon* the mother and sister of an infant struck and killed brought suit to recover damages for the negligently inflicted emotional distress they suffered as a result of witnessing the accident. The plaintiffs had observed the accident from different vantage points. The mother was certainly not within the field of danger, but the sister may have been within it. The trial court granted summary judgment dismissing the mother's claim. The supreme court noted that, under a field of danger analysis, the mother would be denied recovery but the sister would be able to recover. The court stated that this disparity in treatment illustrated the fallacy of the field of danger rule since both mother and sister had suffered similar emotional injuries. 68 Cal. 2d at 733. The court held that the mother had stated a cause of action for emotional distress because the defendant owed a duty of care to those in the mother's position.

The *Dillon* court adopted the position that liability for the negligent infliction of emotional distress would de-

pend upon whether such injuries were foreseeable to the defendant at the time of the accident. *Id.* at 741. *See also,* Note, *Negligent Infliction of Mental Distress: Reaction to Dillon v. Legg in California and Other States,* 25 Hast. L.J. 1248, 1252–53 (1974). The *Dillon* court addressed the problem of the potential for unlimited liability under the foreseeability test by establishing three factors which were to act as general determinants of liability. Those factors were:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." 68 Cal. 2d at 740–41.

The reaction to the *Dillon* rule has been mixed, with some courts following it and others rejecting it. *See generally* Note, *supra,* 25 Hast. L.J. at 1248; Note, *supra,* 37 Wash. & Lee L. Rev. 1235; Comment, *Negligent Infliction of Emotional Distress: A Proposal for a Recognized Tort Action,* 67 Marq. L. Rev. 557 (1984).

Although the parties have framed the issue as a choice between the *Waube* and *Dillon* tests, we do not find it necessary to decide whether the *Waube* rule should be modified or abandoned since we conclude that *Waube* is inapposite to the facts before us. *Waube* involved an observer not directly involved in the tortious activity who sought to recover for emotional distress suffered as a result of witnessing an accident. Connie Garrett was not merely an observer who was not directly involved in the tortious activity. She was an object of the police officer's activities since she was a member of the group of children he was pursuing. In *Waube* and the cases

following it, we considered public policy factors in determing whether liability existed. Here, too, we must consider such factors. In *Waube* the court concluded that it was against public policy to allow an observer to recover for emotional distress. The *Waube* holding is not applicable here because the facts of this case are distinguishable. Connie was not simply an observer.

We thus must determine whether, under general principles of negligence law, Connie Garrett is entitled to maintain an action to recover for her negligently inflicted emotional distress. This court has previously stated that "negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others. That test is to be applied at the negligence phase of the analysis to the world at large and not to the particular plaintiff." *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 857, 236 N.W.2d 1 (1975). "Liability does not necessarily follow even when negligence and negligence as a cause-in-fact of injury are persent. Public policy considerations may preclude liability." *Morgan v. Pennsylvania General Insurance Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979).

We believe that the record before us could support a finding that the police officer acted negligently when he drove without lights through The 15 Outdoor Theater premises in pursuit of the young people he had observed when he swept the fence area with his spotlight. We then must consider whether public policy considerations allow Connie Garrett to maintain an action for emotional distress.

Some of the public policy reasons for not imposing liability despite a finding of negligence are: (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the culpability of the

negligent tort-feasor; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; (5) allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *Morgan, id.* at 737. Applying these policies to this case, we conclude they do not prohibit Connie from maintaining an action for emotional distress. Connie observed the traumatic injuries suffered by Raymond from a distance of 15 or 20 feet. She was close enough to see the squad car run over Raymond and to witness his resulting injuries and severe pain. Connie was Raymond's older sister. We do not believe that allowing Connie to recover for her emotional distress would be likely to open the way for fraudulent claims or would enter a field with no sensible stopping point. We, therefore, hold that under the facts presented in this case Connie Garrett may maintain an action to recover for the emotional distress she suffered as a result of seeing her brother injured.

We next examine the requirement that plaintiffs seeking to recover for negligent infliction of emotional distress must show that they have suffered a physical manifestation of their emotional distress. Connie Garrett argues that the physical manifestation requirement is unnecessary and arbitrary and, alternatively, that the trial court erroneously concluded that she had suffered no physical injury.

The policy behind this court's reluctance to allow recovery for emotional distress in the absence of accompanying or resulting physical injury was explained in *La Fleur v. Mosher,* 109 Wis. 2d 112, 115, 325 N.W.2d 314 (1982), as "the fear of flooding the courts with fraudulent claims and exposing defendants to potentially

unlimited liability for every type of mental disturbance. It further reflects the unwillingness of the law to step in where social controls are more applicable."

Under limited circumstances this court has carved out exceptions to the requirement that the emotional distress be manifested by physical injury. In *Alsteen v. Gehl*, 21 Wis. 2d 349, 124 N.W.2d 312 (1963), we held that, where the defendant's intentional conduct results in plaintiff's emotional distress, the plaintiff need not show an attendant physical injury. In *Ver Hagen v. Gibbons*, 47 Wis. 2d at 227, we specifically stated that the *Alsteen* decision was limited to cases involving intentional conduct and that in negligence actions the physical manifestation requirement remained.

More recently, in *La Fleur v. Mosher*, we eliminated the requirement of physical injury in cases where the emotional distress results from negligent confinement. In *La Fleur* a fourteen-year-old girl was negligently confined in a police department cell for thirteen hours without food, water, or blankets. Although the plaintiff suffered no physical injuries as a result of her confinement, we held that she nevertheless was entitled to maintain an action for emotional distress. Our holding in *La Fleur* was very narrow. We stated, "in the appropriate circumstances the tort of negligent confinement, though based on negligent conduct, by its very nature has the special likelihood of causing real and severe emotional distress. The guarantee that the claim is probably genuine is in the nature of the tort itself." 109 Wis. 2d at 119 (footnote omitted). We stated that we generally affirmed *Ver Hagen* and continued on public policy grounds to require proof of physical manifestations of emotional distress in negligence actions. 109 Wis. 2d at 118.

We decline to abolish the requirement that in negligence actions emotional distress must be manifested by physical injury. As we noted in *La Fleur*, the physical

injury requirement is necessary in order to avoid flooding the courts with fraudulent or trivial claims. When the emotional distress is manifested by physical injuries, it is more probable that the claimed distress is genuine. *Id.*

In its decision on the motion for summary judgment dismissing Connie Garrett's claim, the trial court stated that the record demonstrated that Connie had sustained no accompanying physical injury in conjunction with or as a result of witnessing the accident. The trial court also noted that Connie had not been within the field of danger. Under the *Waube* and *Klassa* rule, Connie's position outside of the field of danger was a sufficient ground to defeat her claim and warrant the trial court's grant of summary judgment against her. Once the trial court found that she was outside the field of danger, her claim failed, and the presence or absence of physical manifestations of her emotional distress was immaterial.

In her deposition, Connie testified to post-accident behavior which evidenced a state of hysteria at the scene of the accident. She also claimed she suffered insomnia for two months and experienced a disruption of her relationship with her family, a drop in her school grades, and a deterioration of her self-image. While it is doubtful that a disruption of one's family relationship or a drop in grades could constitute a physical manifestation of emotional distress, hysteria is recognized as such a physical manifestation. *Stedman's Medical Dictionary* 782 (2d Lawyers' Ed. 1966) defines "hysteria" as:

"A chronic neurosis, or psychoneurosis, characterized by conversion of anxiety into physical symptoms. It is marked by symptoms of the most varied character, from simple nervous instability and attacks of emotional excitement, with causeless crying or laughing, to convulsions, muscular contractures, vasomotor, trophic, and psychic disorders."

2 J. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder*, H–142 (1984), defines "hysteria" as follows:

"A type of mental condition, technically a psychoneurosis, in which exaggerated emotions become transformed into physical manifestations, as overactive motions or perverted (distorted) sense impressions. The patient loses control over his feelings and his acts. He is fearful, anxious, self-conscious, often tearful. He is unable to evaluate, and therefore exaggerates, the significance of sensory impressions, as of cold, pain, etc.

"The patient may lose the feeling for pain in certain areas of the body, or, on the other hand, develop excessive sensitivity. He may complain of tenderness or pain in many parts of the body, especially in the back and head, of dimness of vision, of choking sensations, etc. Other symptoms are spasms, convulsions, paralyses of various muscles, flushing, fever, hallucinations, withholding the urine, etc."

In addition, while insomnia alone may not be a sufficient physical manifestation of emotional distress, insomnia coupled with some other physical symptom may be sufficient. *See Hawes v. Germantown Mutual Insurance Co.*, 103 Wis. 2d 524, 532, 309 N.W.2d 356 (Ct. App. 1981).

Summary judgment is not appropriate if a genuine issue exists as to any material fact. As we stated in *Wright v. Hasley*, 86 Wis. 2d 572, 580, 273 N.W.2d 319 (1979), "[t]here remained competing inferences to be drawn from the plaintiff's testimony. It cannot be said that by her answers to these selected questions on adverse examination any material issue of fact on the question of an extreme disabling emotional response has disappeared from the case." We conclude that the record before the trial court was sufficient to show the existence of a genuine issue of material fact with respect to the

physical manifestation of Connie's emotional distress. In light of our finding that under general principles of negligence Connie may maintain an action for her emotional distress, it was, therefore, error for the trial court to grant summary judgment dismissing Connie's claim, and we reverse that portion of the trial court's order and remand the matter to the trial court for further proceedings.

The final issue we decide is whether Paul Helders may maintain an action for the loss of services, society and companionship, and medical expenses of his stepson, Raymond Garrett. In *Shockley v. Prier*, 66 Wis. 2d 394, 225 N.W.2d 495 (1975), we recognized the right of a parent to maintain an action against a negligent tortfeasor for the loss of aid, comfort, society and companionship of an injured minor child. The rights of a stepparent to bring such an action were not discussed in *Shockley*.

Helders argues that one who stands in *loco parentis* to a child should be entitled to bring an action to recover for loss of the child's services, society and companionship, and medical expenses incurred. We decline to so extend the rule set forth in *Shockley*. Unlike natural or adoptive parenthood, the status of being in *loco parentis* is temporary. 67A C.J.S. *Parent and Child* sec. 153 (1978). Raymond Garrett's natural father has a duty to support him and, in fact, has continued to provide support for both Raymond and Connie. A stepparent may not maintain an action for loss of a stepchild's services or society and companionship. The trial court correctly granted summary judgment on Helders' claim.[2]

[2] Although we hold that, as a stepparent, Helders lacks the standing which *Shockley* afforded to natural parents to maintain an action for loss of a child's services, society and companionship, his standing to seek compensation for out-of-pocket expenses incurred on behalf of Raymond as a result of the accident is not

*By the Court.*—The order of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.

HEFFERNAN, CHIEF JUSTICE (concurring). While I agree with the result of the majority opinion, I cannot agree with its efforts to distinguish this case from *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935), and then to characterize the instant situation as an exception to the "zone of danger" analysis.

The "zone of danger" theory has no place in modern Wisconsin negligence law. It is absolutely clear that, in a situation such as that at issue here, where there is negligence, cause in fact (substantial factor), proximate cause, and injury, there is liability. "Zone of danger," as a part of that analysis, falls out because, where there is a negligent act, there is liability in respect to anyone who is in fact injured by the negligence. The cut-off for liability is to be examined not in an artificial way, such as saying that there can be no liability for one out of the "zone of danger," because, in the event a plaintiff is injured in any way, that plaintiff is in fact within the "zone of danger."

Under the proximate cause analysis of *Osborne v. Montgomery,* 203 Wis. 223, 234 N.W. 372 (1931), however, the fact one is either within or without the "zone of danger" does not dictate liability if there is cause in fact and proximate cause.

Proximate cause, however, subsumes the policy question, to be decided by the court, of whether liability follows from negligence, cause in fact (substantial factor), and injury.

dependent upon his status as a stepparent. The record before us does not contain any information as to whether Helders has incurred such expenses.

In the instant case, we should discard the outworn and anomalous "zone of danger" analysis and instead apply the policy factors included in proximate cause to determine whether the sister of the injured young man may recover if the other predicates of liability are satisfied.

This should be treated as a mine run case: Was there negligence? Did it in fact cause the injury, and is it reasonable to impose liability in view of the particular facts of the case? This does not require a "zone of danger" analysis. It does require the specific overruling of *Waube*.

I would also adopt the position taken in the dissenting opinion of Justice Wilkie in *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 177 N.W.2d 83 (1970). That dissent, joined in by Chief Justice Hallows and the author of this concurrence, urged that emotional distress resulting from negligent conduct should be compensible "regardless of whether this emotional distress was subsequently physically manifested." *Ver Hagen* dissent, at 228. Whether there is in fact emotional injury or compensible distress is a matter of proof under normal evidentiary principles. It is not at all related to the illusory problem of *Waube*. I would specifically overrule *Waube*.[1]

By abolishing the notion that only a person within the "zone of danger" ought to be compensated for emotional distress and then only if there are "physical manifestations" of that distress, some consistency and rationality can inure to this phase of our negligence law.

---

[1] The holding of *Waube* is based on the application of the majority rationale in *Palsgraf v. Long Island R. R. Co.,* 248 N.Y. 339, 162 N.E. 99. *Waube,* at 614. That rationale has been repudiated on numerous occasions by this court. *See, e.g., Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 537–38, 247 N.W.2d 132 (1976); *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 857, 236 N.W.2d 1 (1975); *Schilling v. Stockel,* 26 Wis. 2d 525, 531–32, 133 N.W.2d 335 (1965); and cases cited therein.

If there is the requisite sequence of negligence, causation, and damages—whether physical, emotional, or both —there ordinarily should be liability.

If one is injured physically or emotionally, it is irrelevant whether that person is within a court's hypothetical boundary lines of a fancied "zone of danger," whether the plaintiff feared for his or her own safety, or whether any emotional injury was accompanied by, or resulted in, a manifestation of physical injury. The question is factual. It is for the jury to decide whether injury, physical or emotional, has been proved and was caused by the defendant's negligence.

I would also purge our tort law of the bizarre, egoistic notion that emotional distress is compensable only if occasioned by fear for one's own safety. *See* slip opinion at 231.

The doctrine that one can suffer emotional distress only when within the "zone of danger" is based on the idea that one can only be emotionally distressed as the result of fear for one's own safety. *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 77 N.W.2d 397 (1956). Yet, a number of our opinions deal with the distress caused as the result of the hazard, injury, or death of someone other than the plaintiff. It is clear from our own cases that the basic rationale of the "zone of danger" —fear for the plaintiff's own safety—is largely irrelevant to the claims that have arisen and alien to the characteristics of normal human beings. In *Waube*, the mother, who died of grief after witnessing the death of her child killed by the negligence of the defendant, was never in an area where there was any danger of injury to her. There was no claim of any emotional damage to Mrs. Waube because of her fear for her own safety. Yet, the fact of emotional damage to the mother was not seriously challenged in *Waube* except on totally artificial grounds, *i.e.*, "zone of danger" and "physically manifested injury."

It is beyond the realm of reason and experience to conclude that emotional distress cannot, as a matter of law, result unless there is danger of physical impact to the plaintiff or there is a physical manifestation of the emotional distress. Whether liability should ensue once the chain of negligence and causation is established is a policy decision for application by the court in each individual case. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979) ; *Coffey v. Milwaukee,* 74 Wis. 2d 526, 537, 540–43, 247 N.W.2d 132 (1976) ; *Hass v. Chicago & North Western Ry. Co.,* 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970).[2] It should not be determined by artificial rules mouthing meaningless formulations divorced from reality, such as "zone of danger" and "physical manifestation of injury." As was stated over fifty years ago in *Osborne v. Montgomery,* 203 Wis. 223, 234 N.W. 372 (1931) :

"Any rule which operates to limit liability for a wrongful act must be derived from judicial policy and its limits cannot be defined by any formula capable of automatic application but must rest in the sound discretion of the court." *Id.* at 237.

It is time we dispense with the automatic and irrational application of the liability limiting formulations that the majority attempts to distinguish but at the same time fervently embraces.

I concur in the result.

---

[2] I do not disagree with the nature of policy factors relied upon by the majority. However, those policy factors should be applied by the court, *i.e.,* the judge, after there is a determination of liability—negligence, cause in fact, and injury. It is then, as an element of proximate cause, that the judge in an appropriate case may apply the policy factors as a liability limiting device to prevent an unjust result. *See, Hass v. Chicago & North Western Ry. Co., supra* at 326, and *Colla v. Mandella,* 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957).

Justices Shirley S. Abrahamson and William A. Bablitch join in this concurrence.

Louis J. Ceci, J. (dissenting). I respectfully dissent from the reasoning employed and result reached by the majority in its deterioration of the "zone of danger" requirement in negligent infliction of emotional distress cases as established in *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935), and modified in *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956). I would uphold the "zone of danger" requirement as it stood prior to today's decision.

First, I disagree with the majority's conclusion that *Waube* is inapposite to the facts in this case. The majority concludes that *Waube* is inapplicable because Connie Garrett "was an object of the police officer's activities since she was a member of the group of children he was pursuing." At 232. This statement implies that Connie fled from the scene of the accident with her friends and that she was pursued by the police officer. That implication is incorrect. The police officer shined a spotlight in the area where several children were standing. Connie remained still with one friend, while the others fled. The officer then pursued only those children who were running. Contrary to what the majority concludes, I believe that Connie was a mere observer of the accident.

Additionally, the test established in *Waube* is not whether the plaintiff was an observer of the accident or an object of the defendant's negligent activities, but, rather, whether the plaintiff was in peril of physical impact. We explained in *Waube,*

"It is one thing to say that as to those who are put in peril of physical impact, impact is immaterial if physical injury is caused by shock arising from the peril. . . . It is quite another thing to say that those who are

out of the field of physical danger through impact shall have a legally protected right to be free from emotional distress occasioned by the peril of others, when that distress results in physical impairment. . . . It is our conclusion that [social interests] can neither justly nor expediently be extended to any recovery for physical injuries sustained by one out of the range of ordinary physical peril as a result of the shock of witnessing another's danger." *Id.* at 612–13.

In this case, it is undisputed that Connie Garrett was never closer than fifteen to twenty feet from the squad car that ran over her brother and was never in danger of being injured herself. Connie was never in the path of the squad car prior to or after the accident. I conclude that *Waube* is controlling and would limit liability in this case because Connie Garrett, like the deceased mother in *Waube,* was never in peril of physical impact and, therefore, outside the "zone of danger." In essence, the majority is rejecting *Waube* by allowing this cause of action to stand when the plaintiff was never within the range of physical peril.

Second, recovery should be limited in this case because it is undisputed that Connie Garrett never feared for her own safety. At 227. The majority cites *Klassa,* 273 Wis. 176, and acknowledges that in order to recover for emotional distress, a plaintiff must not only be within the field of danger, but also must actually be in fear for his or her own safety. At 230. However, the majority then fails to apply *Klassa* to the facts of this case and allows Connie's cause of action to stand despite the fact that she never feared for her own safety.

Finally, the majority discusses some of the public policy reasons used by courts to preclude liability despite a finding of negligence. At 233, 234. The "zone of danger" rule for limiting liability in negligent infliction of emotional distress cases was founded on these same concerns. In *Waube,* we maintained,

"The answer must be reached by balancing the social interests involved in order to ascertain how far defendant's duty and plaintiff's right may justly and expediently be extended. It is our conclusion that they can neither justly nor expediently be extended to any recovery for physical injuries sustained by one out of the range of ordinary physical peril as a result of the shock of witnessing another's danger. Such consequences are so unusual and extraordinary, viewed after the event, that a user of the highway may be said not to subject others to an unreasonable risk of them by the careless management of his vehicle. Furthermore, the liability imposed by such a doctrine is wholly out of proportion to the culpability of the negligent tort-feasor, would put an unreasonable burden upon users of the highway, open the way to fraudulent claims, and enter a field that has no sensible or just stopping point." *Id.*, 216 Wis. at 613.

I believe that these public policy considerations behind the "zone of danger" rule remain valid today.

The majority bases its decision to allow Connie's cause of action to stand on the following facts:

"Connie observed the traumatic injuries suffered by Raymond from a distance of 15 or 20 feet. She was close enough to see the squad car run over Raymond and to witness his resulting injuries and severe pain. Connie was Raymond's older sister." P. 234.

Similarly, in *Waube,* the decedent, Susie Waube, was looking out a window and observed an automobile hit her daughter "immediately in front of the home of said Susie Waube and in her presence . . . ." *Id.*, 216 Wis. at 604. Susie Waube was also close enough to witness the accident and the resulting death of her daughter. Because the facts in this case are undistinguishable from those in *Waube,* I believe that the public policy considerations espoused in *Waube* are applicable and preclude liability for any emotional distress suffered as a cause of the defendant's alleged negligence. In conclusion, I would

affirm the summary judgment granted by the trial court in this case because Connie Garrett was never within the field of danger, as is required by *Waube,* and never feared for her own safety, as is required by *Klassa.* Contrary to what the majority contends, I believe that the court's deterioration of these requirements will open the way for fraudulent claims and will enter a field with no sensible stopping point.