Marilyn J. ANDERSON, Plaintiff,

v.

FIRST COMMODITY CORPORATION
OF BOSTON, Defendant.

No. 85–C–101–S.

United States District Court,
W.D. Wisconsin.

Sept. 13, 1985.

 

Theodore C. Beckett, Beckett & Steinkamp, Kansas City, Mo., for plaintiff.

Peper, Martin, Jensen, Maichel & Hetlage, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

At the time of the final pre-trial conference the Court was faced with several motions. Having shortly ruled upon them by order dated September 10, 1985, the Court issues the following reasons for its decisions.

## FACTS

Plaintiff Marilyn Anderson, a resident of Wisconsin, invested in excess of $10,000 in the commodity futures market with the defendant First Commodity Corporation of Boston (FCCB), a corporation organized under the laws of Massachusetts and located in Boston. She is a high school librarian, and the investment capital originally came from a life insurance policy on her late husband.

Plaintiff entered into the contract in February, 1983, at the behest of Stephen Breinling, apparently a resident of Chicago, Illinois, who worked as an account executive for FCCB at its Chicago office. Breinling had solicited plaintiff's account for some time. It is alleged that plaintiff was induced to enter into the contract by several explicit misrepresentations, including the statement that plaintiff was sure to make a profit, that FCCB was the oldest and largest commodities firm in the country and that it maintained the largest research staff of specialists, that a $3,900 management fee assessed upon the opening of the account was usual and customary in the field, and many others concerning the safety of commodity trading and the suggestion that plaintiff need not read the contract or the risk disclosures since they were just government-required formalities. There were allegedly several other misrepresentations.

On November 11, 1976, FCCB, by its officers, executed its consent to the entry of a permanent injunction whereby it was not to engage in fraudulent tactics or commit fraud in the sale of commodity services to the public.

On October 15, 1980, FCCB was ordered to pay (including assessments against its principals) $900,000 in penalties by the Commodity Futures Trading Commission for violating several sections of the Commodity Exchange Act and regulations promulgated thereunder. And on October 16, 1980, FCCB entered into another consent decree in which FCCB and its principals consented to the entry of another permanent injunction.

Two civil judgments for fraud and breach of fiduciary duty had, at the time of filing this lawsuit, been entered against FCCB. These cases, *Kerr v. FCCB* and *Wegerer v. FCCB* (appellate decisions in these cases reported at 735 F.2d 281 (8th Cir.1984) and 744 F.2d 719 (10th Cir.1984) respectively) concern allegations similar to the ones in this case in that misrepresentation and breach of fiduciary duty by an FCCB account executive were alleged.

Jury verdicts in favor of the plaintiffs in those suits were affirmed on appeal.

The contract signed by the plaintiff contained the following provision:

All actions or proceedings arising directly or indirectly in connection with, out of, related to or from this Customer Agreement, or in connection with my account or accounts with FCCB shall be governed by the Law of the State of Massachusetts and shall unless waived, at the discretion and election of FCCB, be litigated in courts whose situs is within the State of Massachusetts. Me and my administrators, successors, and assigns hereby submit to the exclusive jurisdiction of such courts and expressly waive the right to the adjudication or the enforcement of such controversies by any court or any tribunal sitting in any other jurisdiction.

Plaintiff contends that as a result of the actions of the defendant she has suffered stress, anxiety, loss of ability to concentrate and loss of sleep; and that her relationship with her children has deteriorated. Plaintiff has seen a therapist since before the actions of defendant allegedly caused these problems, and her therapist describes plaintiff as suffering a "dysthemic disorder."

Further facts will be discussed within the body of the opinion which follows:

## MEMORANDUM

### I. *Summary Judgment Motion*

Defendant's summary judgment motion presented a number of questions concerning the common law of Wisconsin with respect to fraud and misrepresentation, infliction of emotional distress and a choice of law question relative to punitive damages.

A. Misrepresentation: Failure to disclose prior consent decrees and civil judgments.

To a certain extent, plaintiff's first three claims are based on an alleged misrepresentation that consists of defendants' failure to disclose certain facts relating to prior litigation involving the business dealings of FCCB.[1] Although a failure to disclose a material fact can be considered equivalent to an explicit misrepresentation, *Ollerman v. O'Rourke*, 94 Wis.2d 17, 288 N.W.2d 95, 100 (1980), there must be a duty to disclose the fact. The question of whether there is a duty in a given case is one of law and requires a policy determination. *Id.*

The Wisconsin Supreme Court in *Ollerman* discussed the considerations which should govern this determination:

Over the years society's attitudes toward good faith and fair dealing in business transactions have undergone significant change, and this change has been reflected in the law. Courts have departed from or relaxed the "no duty to disclose" rule when it works an injustice. Thus courts have held that the rule does not apply where the seller actively conceals a defect or where he prevents an investigation; where the seller has told a half-truth or has made an ambiguous statement if the seller's intent is to create a false impression and he does so; where there is a fiduciary relationship between the parties; or where the facts are peculiarly within the knowledge of one party to the transaction and the other party is not in a position to discover the facts for himself.

... Dean Prosser has found a rather amorphous tendency on the part of most courts toward finding a duty of disclosure in cases where the defendant has special knowledge or means of knowledge not open to the plaintiff and is aware that the plaintiff is acting under a misapprehension as to facts which could be of importance to him, and would probably affect his decision.

288 N.W.2d at 102 (footnotes omitted). The Court also cited the Restatement of

---

1. These claims are also grounded on several alleged explicit misrepresentations. The summary judgment motion as to them has been withdrawn. The prior litigation, including private civil suits and actions by federal regulators, are also the subject of a motion in limine.

Torts (Second) (1977) to further illucidate this question. Section 551(2)(e) imposes a duty to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." (As cited at 288 N.W.2d at 105). And the Court cited comment "j" to this section as follows:

> A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis or essence of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic.

*Id.*

■ In light of these instructions from the Wisconsin Supreme Court, this Court must conclude that defendant was under no duty to disclose its prior litigation and regulatory history. None of the examples cited in the above excerpts or footnote from *Ollerman* resemble the situation˙ here. The fact which was basic to the transaction in *Ollerman* was a hidden defect in real estate (a capped well under the surface). The prior litigation history of FCCB is in no way basic to the opening of plaintiff's account. And, of course, there was no fiduciary relationship until after the account was opened.

Accordingly, defendant's motion for summary judgment must be granted to the extent that plaintiff seeks the imposition of liability for failure to disclose FCCB's prior litigation history. The history is not only not basic to the transaction, the imposition of such a duty would have significant consequences in this and other industries entirely out of proportion to the minimal benefit gained by consumers.

B. Negligent Infliction of Emotional Distress

■ Plaintiff has attempted to state a claim for negligent infliction of emotional distress. Although Wisconsin recognizes such a claim, an element of the claim is that any emotional harm must be accompanied by a physical injury. This requirement was recently reaffirmed in *Garrett v. City of New Berlin*, 122 Wis.2d 223, 362 N.W.2d 137, 144 (1985). The reason for such a rule is to "avoid flooding the courts with fraudulent or trivial claims." *Id.*

There is no evidence in the record substantiating plaintiff's claim of a physical manifestation of her emotional distress. The best plaintiff has been able to do is offer the deposition testimony of her therapist in order to create an issue of fact. However, the therapist described plaintiff's injury as a "dysthemic disorder," which is, according to the *Random House Dictionary of the English Language* (Unabridged Edition, 1981), simply synonymous with despondency. And, in 1 J. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder*, 1985, dysthemia is "any mental disorder" or "mental depression; despondency." In other words, plaintiff has offered nothing in the way of a physical manifestation of her emotional problems except perhaps an allegation of some temporary insomnia which, under Wisconsin law, is clearly not enough. *Hawes v. Germantown Mutual Ins. Co.*, 103 Wis.2d 524, 309 N.W.2d 356 (1981).

Accordingly, defendants' motion for summary judgment on plaintiff's claim for negligent infliction of emotional distress must be granted.

C. Intentional Infliction of Emotional Distress

The rule requiring physical manifestation of emotional distress does not apply when the infliction of such harm is intentional. *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312 (1963). However, whether the emotional harm is caused by negligent or intentional action, there is clearly a threshold of seriousness under which there will be no

liability. In the *Alsteen* case, the severity requirement was expressed as follows:

> The plaintiff must demonstrate that he suffered an extreme disabling emotional response to the defendant's conduct. The severity of the injury is not only relevant to the *amount* of recovery, but is a necessary element to *any* recovery. The plaintiff must demonstrate that he was unable to function in his other relationships because of the emotional distress caused by defendant's conduct. Temporary discomfort cannot be the basis of recovery.

*Id.* at 318 (emphasis in original). More recently, the standard has been expressed as follows:

> Severe emotional distress is anxiety of such substantial quantity or enduring quality that no reasonable person could be expected to endure it.

*Evrard v. Jacobson,* 117 Wis.2d 69, 342 N.W.2d 788, 791 (1983).

■ Although it might be argued that a determination of whether a party has established such a level of harm is a jury question, it appears to the Court that plaintiff will be unable to produce evidence sufficient for a reasonable jury to infer such severity of harm. Plaintiff's therapist, who is neither a psychiatrist nor psychologist, but rather a social worker, described her condition as dysthemia, that is, as previously discussed, a rather generalized despondency or depression of undetermined seriousness. There is no evidence that plaintiff took medication for the condition, nor does it appear that she was hospitalized. There is no allegation that she lost any time at work or suffered any disruption of her interpersonal relationships. Her visits to her therapist were primarily concerned with problems with her children—problems which predate the defendants' actions.

It must be concluded that plaintiff cannot overcome the significant seriousness threshold to emotional distress claims imposed by Wisconsin law. The evidence produced in response to defendants' motion for summary judgment on this claim is insufficient to allow an inference of harm of sufficient degree. The motion will be granted.

### D. Punitive Damages

■ Plaintiff asks for punitive damages in her complaint. The parties agree that Massachusetts law does not allow punitive damages under the facts of this case, but Wisconsin law does. The contract between the parties of course specifies that Massachusetts law shall apply to disputes arising out of contract. Thus, the question is whether that contractual choice of law provision is effective, and, if not, whether Wisconsin or Massachusetts law applies. The parties agree that the forum's—Wisconsin's—choice of law rules apply. *Klaxon v. Stentor Electric,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Wisconsin has adopted the Restatement, Conflict of Laws (Second) (1971) § 187 with respect to the first part of the question posed above, *First Wisconsin v. Nicolaou,* 85 Wis.2d 393, 270 N.W.2d 582 (1978); and Professor Leflar's choice influencing considerations with respect to the second part of the question. *Hunker v. Royal Indemnity Co.,* 57 Wis.2d 588, 204 N.W.2d 897 (1973).

The Court has previously found that a choice of forum provision in the contract would not be observed because of a prima facie showing of overreaching by the defendants who drafted the contract. The analysis here is somewhat similar. Unless the choice of law provision itself was the subject of misrepresentation or fraud, the provision will not be denied effect just because of the presence of fraud, misrepresentation or overreaching. Restatement, Conflict of Laws (Second) (1971), § 201, Comment "c." Similarly, Comment "b" following § 187 of the Restatement provides that a choice of law provision will not be given effect if "the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake." This comment also contains the suggestion that the Court con-

sider whether the choice of law provision is contained in an adhesion contract.

This is, of course, an adhesion contract to the extent that it was unilaterally drafted by FCCB. There is no evidence of bargaining between the parties on any issue, much less on the choice of law provision. While this may not dictate a refusal to enforce the provision, the Court is inclined to conclude that the parties' choice of law is ineffective. This is not only an adhesion contract; it is one which apparently seeks to insulate FCCB from the consequences of wrongful behavior. The only issue in which the choice of law provision has an impact is in the availability of punitive damages. It is true that Massachusetts has a legitimate interest in such contracts—rules against punitive damages are animated by a desire to protect local business against excessive liability, according to most commentators. *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979,* 644 F.2d 594, 613 (7th Cir.1981). But that just means that there is a conflict. The plaintiff should not be forced to rely on the law of the defendants' choosing, at least with respect to tort claims growing out of an adhesion contract.

Even if this were not true, § 187 of the Restatement also provides that a choice of law provision can be overcome if it "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties."

It is debatable how much greater the forum's interest must be than that of the chosen state. In Wisconsin, "the law of the forum should presumptively apply unless it becomes clear that non-forum contacts are of the greater significance." *Wilcox v. Wilcox,* 26 Wis.2d 617, 133 N.W.2d 408, 416 (1965). And the purpose of this presumption is "to trigger the responsibility of the court to carry out the forum state's policy unless it appears that the forum state's policies are unaffected by

using a nonforum rule, or unless the facts show that the contacts with the tort are so minimal that the use of the forum law would be clearly the result of interloping chauvinism." *Conklin v. Horner,* 38 Wis.2d 468, 157 N.W.2d 579, 582, n. 2 (1968). Accordingly, the requirement in § 187 that the interest of an opposing state's law be materially greater than the chosen law is of questionable force under circumstances.

The Court, however, concludes that Wisconsin's interest is materially greater, not just marginally so. As previously mentioned, Massachusetts has a legitimate interest in limiting the liability of its local business. Wisconsin's interest is represented by the standard rationale for punitive damages: to deter and punish wrongdoers. *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 294 N.W.2d 437 (1980); Wisconsin Jury Instructions, # 1717 (1983). And such damages are only available for malicious, wanton, reckless or willful activity. *Id.* Further, such damages may only be awarded after a plaintiff shows such a state of mind by a middle burden of proof, denominated in Wisconsin as clear, satisfactory, and convincing. *Wangen,* 294 N.W.2d at 458. In view of the importance with which Wisconsin courts view this matter, as evidenced by the kind of conduct against which punitive damages are directed and the evidentiary burden imposed before such damages are awarded, Wisconsin's interest must be held to be materially greater than that of Massachusetts.

And it is clear that punitive damages reflect a fundamental policy determination. In deciding that punitive damages were available in a product liability action, the Wisconsin Supreme Court discussed the history of punitive damages in Wisconsin and described their availability as "a valuable and effective tool in the control of human conduct." *Wangen, supra,* at 449. And the Court cited its opinion in *Luther v. Shaw,* 157 Wis. 234, 147 N.W. 18 (Wis.1914) as follows:

It [punitive damages] tends to elevate the jury as a responsible instrument of

government, discourages private reprisals, restrains the strong, influential, and unscrupulous, vindicates the right of the weak, and encourages recourse to and confidence in the courts of law of those wronged or oppressed by acts or practices not cognizable in or not sufficiently punished by the criminal law.

147 N.W. at 20. This concept of punitive damages as serving to encourage private attorneys general was reiterated more recently in *Kink v. Combs*, 28 Wis.2d 65, 135 N.W.2d 789 (1965), where the Court compared punitive damages to statutorily allowed double or treble damage suits:

The multiple-damage suits countenanced by our statutes recognize the principle that certain types of violations will not be prosecuted unless the injured parties judgment is fattened by the equivalent of punitive damages.

135 N.W.2d at 798. According to the Restatement, a fundamental policy is a "substantial" one. It is one which "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Comment "g" following § 187.

Having said all of this, it is clear that Wisconsin law will also be the choice after application of the factors enunciated by Professor Leflar. They are:

A. Predictability of results;

B. Maintenance of interstate and international order;

C. Simplification of the judicial task;

D. Advancement of the forum's governmental interests;

E. Application of the better rule of law.

*See Hunker v. Royal Indemnity Co.*, 57 Wis.2d 588, 204 N.W.2d 897, 902 (1973). To start with, there is the presumptive application of the law of the forum, a policy dictated by the fact that the Court is "an instrument of governmental policy of the State of Wisconsin." *Id.* at 903. In fact, Wisconsin law is "the only appropriate law, in the absence of displacing factors." *Id.*

Recourse to the choice-influencing factors above also support application of Wisconsin law.

It is, for instance, predictable that Wisconsin courts will apply its own law when one of its citizens sues for an intentional tort directed at that citizen in this state.

Maintenance of interstate order concerns a balancing of interests between or among the states with an interest in the subject matter. The Wisconsin Supreme Court has described this balance as follows:

This criterion requires that a state that is minimally concerned defer to the interests of a state that is substantially concerned.

*Conklin, supra,* 157 N.W.2d at 584. This Court has already determined that Wisconsin has a materially greater interest in this dispute than does Massachusetts.

The judicial task is in no way affected by the choice of law in this matter. The application of Wisconsin law to the question of punitive damages will simply require an additional question or two in the special verdict for the damage phase of the bifurcated trial already scheduled in this matter.

Finally, it must be conceded that the forum's governmental interests are advanced by application of its rule; and further, that, sitting as a Wisconsin court, this Court must conclude that the availability of punitive damages represents the better rule of law inasmuch as the rule is the result of court-made law.

Accordingly, FCCB's motion for summary judgment with respect to plaintiff's claims for punitive damages must be denied.

## II. *Motions in Limine*

The defendant also seeks to withhold certain evidence: first, consent decrees, judgments, and the testimony of witnesses who have complaints similar to plaintiff; and second, the testimony of plaintiff's expert witness, Leslie Jordan, on the ground that her testimony will violate the attorney-client privilege.

A. Other wrongs or acts.

■ Consent decrees, prior judgments, and testimony of similar conduct may be admissible to show intent, plan, and knowledge. Rule 404(b), Federal Rules of Evidence.

The Court agrees with the Tenth Circuit, which faced the identical issue in *Wegerer v. First Commodity Corporation of Boston*, 744 F.2d 719 (10th Cir.1984), that the consent decrees are probative of intent. They are, in fact, much more probative of intent than they are prejudicial.

The consent decrees also bear on another issue. They support the inference that the defendants misrepresented a material fact. Plaintiff has alleged that she was told that FCCB was the oldest and largest commodities brokerage firm in the United States, with the largest and oldest research department in the country. Whether these representations are true or not (and assuming they were made), they are designed to impress upon the potential customer that he or she is dealing with an old, reputable company which can be trusted.

Although the previously entered civil judgments (the above cited *Wegerer* case being one of them; *Kerr v. FCCB*, 735 F.2d 281 (8th Cir.1984) being the other) are arguably the same sort of evidence, the probative value of these decisions is not as certain. The Court does not allow these decisions into evidence. And, of course, the testimony of other litigants whose cases have not evolved into judgments is even less probative of plan or intent and more likely to prejudice.

Accordingly, the motion in limine will be granted with respect to judgments and decisions entered in the *Wegerer* and *Kerr* cases, and with respect to litigants allegedly in the same position as the plaintiff; and will be denied as to the three consent decrees.

B. Leslie Jordan.

■ Ms. Leslie Jordan is a commodity consultant and former investigator for the Commodity Futures Trading Commission. She has been named by the plaintiff as an expert witness. The defendant objects on the ground that her testimony violates its attorney-client privilege.

It appears that Ms. Jordan was employed at one time by Mr. Robert Boraks, an attorney who was employed by FCCB as an independent compliance counsel after the consent decree. FCCB agreed to employ such a person as part of that settlement. Boraks was to prepare a report covering FCCB's compliance with the consent decree. According to the defendant, Ms. Jordan:

> Prepared a report covering First Commodity's back office and order taking procedures and she reviewed transactions in a number of randomly-selected accounts involving long-term forward positions held by First Commodity customers.

Defendant's Memorandum, page 2.

It appears that the relationship between FCCB and Mr. Boraks was not that of attorney-client. The defendant would have the Court hold that Mr. Boraks was hired to provide legal advice in the traditional sense. Instead, FCCB was required by regulatory activity of a government agency to hire someone to insure that FCCB complied with the consent decree entered at that time. Mr. Boraks may have been an attorney and FCCB may have been his paymaster, but he was not hired to perform confidential legal services for a client. It is ludicrous to suggest, as does defendant, that a failure to disqualify Ms. Jordan will "result in reluctance ... to fully disclose information to the counsel hired to investigate such matters." Defendant's Reply Memorandum, page 5. The disclosures to Mr. Boraks were the result of a court order to remedy past wrongdoing. Reticence to divulge such information is not the issue. Disclosure was required and, in fact, became part of a public record.

Accordingly, the motion in limine to exclude the testimony of Leslie Jordan will be denied.

CONCLUSION

The Court concludes that FCCB's failure to disclose prior consent decrees and civil judgments is not a cause of action. Further, as a matter of law, plaintiff's injuries are not sufficiently serious to justify a claim for injuries for infliction of emotional distress, whether intentional or negligent; and further, plaintiff does not have the physical injury necessary to substantiate a claim for negligent infliction of emotional distress.

Wisconsin's interest in this litigation being more significant than that of Massachusetts, the Court concludes that Wisconsin law will govern plaintiff's claim for punitive damages.

Finally, the Court concludes that the evidence of the prior consent decrees entered against the defendant should be admitted. On balance, such evidence is more probative of intent or plan than it is prejudicial. However, the evidence of other civil judgments and the testimony of similarly situated investors is less probative, potentially more prejudicial and will not be admitted.