OSBORNE, by guardian *ad litem*, Respondent, vs. MONTGOMERY, Appellant.[1]

*October 14, 1930—January 13, 1931.*

---

[1] Paragraphs 7 and 16 embody portions of the American Law Institute Restatement of the Law of Torts, sanctioned by the court.

224

For the appellant there was a brief by *Schubring, Ryan, Clarke & Petersen* of Madison and *Saltzstein & Scheinfeld* of Milwaukee, and oral argument by *Wm. Ryan* and *Aaron Scheinfeld.*

For the respondent there was a brief by *Olin & Butler,* and oral argument by *Clifford G. Mathys,* all of Madison.

ROSENBERRY, C. J. The principal contention of the defendant here is that the plaintiff was guilty of contributory negligence as a matter of law; that the damages assessed by the jury are excessive, and that the court erred in its instructions to the jury in the particulars hereinafter stated. The evidence in the case presents a clear jury question as to whether or not the plaintiff was guilty of contributory negligence. A full recital of the facts would be of no especial value and the principles of law involved have been frequently stated and restated.

The jury assessed the plaintiff's damages at $2,500, which covered pain and suffering and loss of earning capacity after he arrives at the age of twenty-one years. (Loss of earnings before he reaches twenty-one would be recoverable only in a separate action by the father.) The plaintiff sustained a double backward dislocation of the elbow joint and a fracture of the lower end of the humerus, and suffered much pain in the days immediately following the accident. It is undisputed that the injury is to some extent permanent. There is a ten per cent. loss of flexion and five per cent. loss of extension. The evidence of the plaintiff's doctor as to permanent injury was as follows:

"At the time of this examination a few days ago I found that there is a limitation in extension; a slight limitation in flexion, and an outward displacement of the arm at the elbow which is the same as it was at the time I examined him last April. . . . In view of the fact that the limitation has not changed since April to now, which is approximately eight months, under ordinary use, I think you can safely say that it is a permanent condition. . . .

"It is true that it might not be noticeable at all in a great mass of work which an ordinary individual will do."

The medical evidence for the defendant was as follows:

"The only physical condition that I found was that about the left elbow; and I would say that there has been some

interference with the motion of the arm at the elbow. That is, he is unable to extend the arm; that is, put it out straight, completely. There is what I would estimate a slight loss of extension; very close to normal; perhaps only about five per cent. It would handicap him very little."

At the trial plaintiff testified that he could play hockey, chin himself, swim, that he could play his trumpet in the orchestra without putting it on his knee, and that he could play basketball and play catch with a baseball.

It is considered that the damages awarded in this case are excessive and that the case will have to be reversed for that reason, with directions to the trial court, in its discretion, to fix a minimum amount which would be the lowest amount a jury would be warranted in finding under correct instructions, with the option to the plaintiff to take judgment for that amount; or in the event that the trial court should determine that the minimum amount should not be fixed or, being fixed, plaintiff shall decline to accept the option, for a new trial upon the question of damages; the judgment being in other respects affirmed. It is often thought that where a judgment is reversed because of excessive damages this court should fix the minimum amount and not leave it to the trial court, without advice as to the opinion of this court upon the question. A moment's reflection, however, will convince any one that the trial court, who has had the injured party before it, who has heard all of the expert and other testimony in the case and is thoroughly familiar with the whole situation, is in a much better position to determine the minimum amount than is this court, which must act upon a printed record. It should be indicated in this case, however, that this court is of the opinion that $1,500 would constitute a maximum recovery for the damages in this case.

The defendant complains that the following instruction

given by the court upon the subject of negligence was erroneous:

"1. By ordinary care is meant that degree of care which the great mass of mankind, or the type of that mass, the ordinarily prudent man, exercises under like or similar circumstances.

"2. Negligence is a want of ordinary care.

"3. Every person is negligent when, without intending to do any wrong, he does such an act, or omits to take such a precaution, that, under the circumstances present, he ought reasonably to foresee that some injury or damage might probably result from his conduct. He is in duty bound to foresee all such natural consequences of his conduct as an ordinarily prudent and intelligent person would ordinarily foresee under the then present circumstances.

"4. Negligence is a cause of injury or damage when it alone produces it, or co-operates with some other cause or causes in producing it jointly as a natural result.

"5. There may be more than one cause of an injury or damage. The negligence of one person alone may produce it, or the negligence of two or more persons may jointly produce it.

"6. Whether the boy, Lester Osborne, exercised due care under all the facts and circumstances disclosed by the evidence must be determined in the light of the care which is ordinarily exercised by children of the same age, capacity, discretion, knowledge, and experience under the same or similar circumstances; but he must be held to the exercise of such care as the great mass of boys of his age, intelligence, experience, and knowledge ordinarily exercise under the same or similar circumstances."

We number the paragraphs for convenience.

It is conceded that that part of the instruction included in the third paragraph was approved in *Hamus v. Weber,* 199 Wis. 320, 226 N. W. 392, but it is urged that the instructions approved in that case were not correct and that in effect the *Hamus Case* overrules *United States F. & G. Co.*

*v. Verbergt*, 197 Wis. 542, 222 N. W. 799, and *Sommer-field v. Flury*, 198 Wis. 163, 223 N. W. 408. In view of the criticism of the instructions given in this case, it is considered that the whole matter is entitled to a re-examination and reconsideration. The departure authorized in the *Hamus Case* came about because of the widespread conviction, particularly on the part of trial judges, that the approved instructions relating to proximate cause and reasonable anticipation, which had taken a more or less crystallized form, did not serve to enlighten the jury as to its duty and were often misleading and misunderstood. It was in the hope of introducing an instruction that would be more readily understandable by persons not skilled in the refinements of the law that the *Hamus Case* was written. We are convinced that what was said there needs some amendment.

It is hardly necessary to say that we enter upon a discussion of this matter without any expectation of saying the final word in regard to it. It seems, however, not only proper but necessary to call attention to some fundamental considerations. The difficulty of dealing with the subject is vastly increased because the terminology of the law of torts is at present undergoing a decided change. The character of this change is exhibited more completely and thoroughly in the restatement being made under the auspices of the American Law Institute than elsewhere. Heretofore the law of torts in general has been stated in terms of applicable remedies rather than in terms of wrongful invasion of legally protected interests and the consequences thereof. It is apparent that the ultimate question being investigated in cases like this is whether or not the defendant is liable to the plaintiff in damages. Stated in terms often employed, this liability follows as a matter of law in the absence of contributory negligence or intervening cause when certain

basic facts are ascertained: (1st) Did the defendant fail to exercise ordinary care? (2d) Except in a certain class of cases referred to later, under the circumstances of the case, should the defendant, as a reasonably prudent person, have anticipated that the act would probably cause damage to another? (3d) Was the act complained of the cause in a legal sense of plaintiff's injury? One is prompted to say, why not submit to the jury the simple question, Was the defendant careless as a result of which the plaintiff sustained the injuries complained of? The question, however, immediately arises, What is carelessness and when is an act the cause of the injury complained of? In answering these questions it would be necessary to define a new set of terms and we would return to the starting point.

Manifestly, not every want of care results in liability. In order to measure care some standards must be adopted. Human beings must live in association with each other, as a consequence of which their rights, duties, and obligations are relative, not absolute. We apply the standards which guide the great mass of mankind in determining what is proper conduct of an individual under all the circumstances and say that he was or was not justified in doing the act in question. While it is true that the standard thus set up is varying and indefinite, it is nevertheless one which may be fairly and justly applied to human conduct. Such a standard is usually spoken of as ordinary care, being that degree of care which under the same or similar circumstances the great mass of mankind would ordinarily exercise.

In a consideration of this subject it is easy to get lost in a maze of metaphysical distinctions, or perhaps it may better be said it is difficult not to be so lost. The defect in the instruction approved in *Hamus v. Weber, supra,* is that it indicates no standard by which the conduct of the de-

fendant is to be measured. In support of the instruction it is argued that the great mass of mankind do not indulge in conduct which results in harm to others; and therefore it must follow that if one does an act which results in injury to another, he departs from the standards which are followed by the great mass of mankind. The argument is based upon an inference not readily drawn, and, in addition to that, the premise is not sound. We are constantly doing acts which result in injury to others which are not negligent and do not result in liability. Many of the cases classified as those *damnum absque injuria* and cases where the damages are said to be consequential and remote are illustrations of this. While the acts result in injury to others, they are held to be not negligent because they are in conformity to what the great mass of mankind would do under the same or similar circumstances. The statement is true in all situations where liability exists, but it does not exclude situations where liability does not exist.

The fundamental idea of liability for wrongful acts is that upon a balancing of the social interests involved in each case, the law determines that under the circumstances of a particular case an actor should or should not become liable for the natural consequences of his conduct. One driving a car in a thickly populated district on a rainy day, slowly and in the most careful manner, may do injury to the person of another by throwing muddy or infected water upon that person. Society does not hold the actor responsible because the benefit of allowing people to travel under such circumstances so far outweighs the probable injury to bystanders that such conduct is not disapproved. Circumstances may require the driver of a fire truck to take his truck through a thickly populated district at a high rate of speed, but if he exercises that degree of care which such drivers ordinarily exercise under the same or similar circumstances, society,

weighing the benefits against the probabilities of damage, in spite of the fact that as a reasonably prudent and intelligent man he should foresee that harm may result, justifies the risk and holds him not liable.

From a multitude of cases and a long consideration of this entire field, courts have arrived at the conclusion that in the absence of a standard declared by statute or previous decision, before liability can be predicated upon the acts of the defendant it must appear that he has failed to exercise that degree of care which the great mass of mankind exercise under the same or similar circumstances, which is usually designated "ordinary care." While this standard lacks definiteness, if it be conceded that some standard must be applied, no better standard is suggested and we find none. It is considered that instructions intending to lay down the rules of law which should guide the jury in determining the ultimate facts in the case, should somewhere, in some way, include a reference to this generally accepted standard. No form of statement is sacrosanct. It is the idea that is essential. The instruction in *Hamus v. Weber, supra,* indicates no standard, but in the present case the court included that element in the instruction in paragraphs one and two. While the combination of the elements may not be made in a very artistic form, the elements are all there.

We enter upon a discussion of the matter of causation with still greater timidity. We shall attempt to make no metaphysical distinction in the use of terms but use them in the ordinarily accepted way.[1] It is manifest that not every act involving a want of ordinary care results in liability to

---

[1] Any one interested in the philosophy of the matter is referred to Rationale of Proximate Cause, Green; 1 Foundations of Legal Liability, Street, pp. 71–190; 1 Thompson, Commentaries on the Law of Negligence, Proximate and Remote Cause, p. 43 *et seq.*; *Mahoney v. Beatman* (110 Conn. 184, 147 Atl. 762) 66 A. L. R. 1121.

the actor. In order that liability may arise, the act so performed must have resulted in a wrongful invasion of an interest of a person protected by law. One may go into a secluded place alone and be as careless as he likes with a loaded firearm. It may be discharged, but there is no liability because no protected interest is wrongfully invaded. Were he to perform the same act in a crowded thoroughfare and the firearm be discharged and a person injured, liability follows because his failure to exercise ordinary care has resulted in the invasion of the protected interest of the injured party. What interests are protected and to what extent is a matter which involves a statement of a considerable part of the law of negligence.

It is also apparent upon reflection that an injury may be so far removed from the field within which the act will probably operate that the conscience of society would say that under such circumstances the actor should not be held liable. The liability of the actor may therefore depend upon whether or not the actor as an ordinarily prudent and intelligent person should reasonably have foreseen as a consequence of his act that injury would probably result. This element of liability is often referred to as reasonable anticipation, and the word "foreseeable" and its derivatives have been invented to describe the same thing. As was pointed out so clearly by Mr. Jeremiah Smith,[2] reasonable anticipation is related to two distinct things: (1st) to negligence itself, and (2d) it may operate to limit the legal consequences of the negligent act to the actor.

In *Bonniwell v. Milwaukee L., H. & T. Co.* 174 Wis. 1, 182 N. W. 468, it appeared that the deceased son of the plaintiff, over eleven years of age, had climbed an electric light tower belonging to the defendant. After some discus-

[2] Legal Cause in Actions of Tort, 25 Harvard Law Review, beginning on page 102.

sion between the deceased boy Clarence and his playmates and against their protest, he having been warned also by his father and by a sign, Clarence climbed the tower, pulling himself up to a ladder, the bottom of which was eight and one-half feet above the ground, circled the tower twice on cross-pieces, and when about half way up the tower, against the repeated protest of his companions, he reached out and took hold of a wire at a place where it was insulated to prevent it from coming in contact with the electric tower, and received an electric shock from which he died four days later. It was held that the defendant "was not bound to anticipate that a child or children would climb the tower in such a manner as to be endangered by its wires, and that the question of the negligence of defendant should not have been submitted to the jury." This means that under the circumstances the defendant was not negligent because it had failed to insulate its wires so as to protect a boy doing acts which the defendant had no reason to foresee or anticipate a boy would do. Under such circumstances the question of the defendant's negligence did not arise as a matter of law. Much more frequently it is for the jury to say whether or not the defendant should have been required, as a matter of fact, to anticipate or foresee probable harm to others, and so foreseeability has come to be considered as an element of negligence on the part of a defendant in cases of this class.

This element of liability is included in the definition of negligence. See particularly all of the definitions of negligence set out in *Hamus v. Weber, supra.* The Restatement of the Law of Torts defines negligence as "any conduct, except conduct recklessly disregardful of the interest of others, which falls below the standard established by law for the protection of others against unreasonable risk of injury." Here are two elements: reckless violation of standards, and

an unreasonable risk of harm to the interests of another. If risk of harm cannot be foreseen by a reasonably prudent and intelligent man, the risk is not unreasonable, hence there is no negligence, consequently no liability.

Assuming, however, that an actor is guilty of negligence which results in damage to another, what is the extent of his liability? It is often said that he is liable for all of the natural and probable consequences of his wrongful act.[3] This is not the law in Wisconsin; his liability is not so limited. In *Koehler v. Waukesha Milk Co.* 190 Wis. 52, 208 N. W. 901, the defendant delivered milk in a defective bottle. The plaintiff's intestate, stepping out to pick up the bottle where it had been placed, cut her hand. As a consequence she died three weeks later of blood poisoning. On behalf of the defendant in that case it was urged that the results were so unexpected and unusual as to make them remote in a legal sense and the damages were what are ordinarily termed consequential, and that the defendant, as a consequence, was not liable. This court, however, adopted the rule that given a negligent act creating liability, the extent of that liability is for all consequent damages naturally following the injuries whether such resulting damages were reasonably to be anticipated or not. This leaves out the element of probability or reasonable anticipation or foreseeability as a factor, operating to limit the extent of the defendant's liability. It may well be that the language used in the *Koehler Case* is too broad. On the other hand, to say that the injuries must have been natural and probable is too restricted. That one may cut his hands in picking up a nicked milk bottle is quite probable, but that one will die of blood poisoning is quite improbable but it is a natural result. The first thing any intelligent person thinks of when he re-

---

[3] 1 Sutherland on Damages (4th ed.) § 16 *et seq.* and cases cited; 1 Thompson on Negligence, ch. VI.

ceives a cut is a disinfectant, which is used in an attempt to prevent blood poisoning. Take a hypothetical case : a farmer negligently leaves his team and a wagon in the village street without tying the horses, intending to be momentarily absent in the transaction of business in the store. The team, an ordinarily gentle one, becomes frightened at some unusual object, runs away, strikes an automobile, which in its disabled condition runs into a railroad switch, as a result of which the switch is thrown and a heavy through passenger train derailed with great loss of life and destruction of property. Here the sequence of events is in the ordinary course of nature. The derailing of a train, however, is a highly improbable result of the farmer leaving his team untied on a village street. If the rule of the *Koehler Case* be applied literally, the farmer should be held liable for all the resulting damage, not only such as he reasonably could have foreseen as an ordinarily prudent and intelligent person. The fact that the natural consequences cannot be foreseen does not operate to limit liability.

Any rule which operates to limit liability for a wrongful act must be derived from judicial policy and its limits. cannot be defined by any formula capable of automatic application but must rest in the sound discretion of the court. This particular element of liability is not involved in this case. We shall not pursue the matter further.

In *Mahoney v. Beatman,* 110 Conn. 184, 147 Atl. 762, 66 A. L. R. 1121, the supreme court of the state of Connecticut dealt with the matter of proximate cause so-called. In that case the plaintiff was driving his Rolls Royce southerly at a speed of sixty miles an hour. The defendant was driving his Nash car northerly on the same highway at a reasonable rate of speed but on the wrong side of the road. Upon the trial the court found that (1) the defendant's car was on the wrong side of the road; (2) the speed of plaintiff's

car was unreasonable but it did not contribute to the collision, which was due entirely to the negligence of the defendant; (3) the speed did materially hamper plaintiff's chauffeur in controlling the car after the collision, and owing to it he completely lost control of it; (4) since the court was unable to find from the evidence the amount of damage caused at the time of the impact, the court found the plaintiff entitled to nominal damages which were assessed at $200. It appeared that after the impact the plaintiff's car traveled in a three-quarters or diagonal position a distance of 125 feet on the west side of the road southerly and then suddenly turned across the road and traveled to the top of a sloping bank about four feet high, where it struck a tree and knocked down a two and one-half foot stone wall and rolled over on its side. It was apparent that most of the damage was done after the impact. It cost $5,850 to repair the car. The defendant having been found negligent by the court, the question for decision was for what consequences, under the circumstances of the case, was the defendant liable. The trial court thought his liability ended with the damage done by the impact. The supreme court, however, was of a different opinion. It is difficult to make an adequate extract from the opinion, which should be considered as a whole. The following presents the matter in part:

"The (trial) court's theory was that after the car had veered there would have been an opportunity for the driver to have regained control of the car, or to have stopped it before these injuries occurred. If the facts in evidence had justified the court in finding that after the collision the driver was negligent and his negligence was the cause of the subsequent injuries, a different proposition would have been presented. But the court did not so find. There is no substantial factor standing as a causal connection between the negligent act of the defendant and these injuries except the impact of the collision. The negligent act to which the plaintiff has not materially contributed is responsible for all the injurious consequences and is a substantial factor in

producing them. These consequences follow in true causal relation until the negligent act has become spent or exhausted, or some intervening agency has come into existence after the negligent act and diverted the results of the negligent act to 'some new and different end.'"

After a very careful and thorough consideration of the matter, the Connecticut court concluded that the term "substantial factor" was a better one to use in an instruction to the jury than "proximate cause." No doubt the word "proximate" is misleading. Etymologically it refers to the next or nearest cause, and as pointed out in *Berrafato v. Exner,* 194 Wis. 149, 216 N. W. 165, is often misleading to lawyers as well as jurors. It undoubtedly leads to a great deal of confused thinking.

The instruction given in the *Hamus Case, supra,* confuses foreseeability as applied to negligence with foreseeability as applied to the liability for the consequences of a negligent act. Neither negligence nor the extent of liability under our cases is dependent upon the ability of the actor to foresee all such consequences as an ordinarily prudent and intelligent person would ordinarily foresee under the then present circumstances. It is not his ability to foresee natural consequences but his ability tested by the ability of a reasonably prudent, careful person to foresee that harm may be done to the interests of another under the circumstances that constitutes an element of negligence. Not many people can foresee the natural consequences of blood poisoning which results from a cut, but a reasonable person can and does foresee that harm will result from a cut. Whether in an instruction to the jury the term "proximate cause," "legal cause," or "substantial factor" is used, is perhaps to some extent a matter of individual choice, providing the proper meaning be attributed to each term. It has been suggested that the term "responsible cause" be used. The word "responsible," however, connotates, at least to the ordinary

mind, a notion of liability. If one is responsible for a thing he is liable for it. In an attempt to analyze liability, it is confusing to use a word which to some extent at least involves the term sought to be analyzed or defined.

We come now to a consideration of that class of cases where foreseeability is not an element of negligence,—a more accurate statement would be to that class of ·cases where the defendant is foreclosed or concluded upon the question of foreseeability. 'In all those cases where it is said that, the performance of the wrongful act being admitted, the defendant is guilty of negligence as a matter of law or that the act is negligent *per se,* the case is one which admits of no question as to reasonable anticipation or foreseeability. These cases are those in the main where the act amounts to a violation of a standard of care fixed by statute (ordinance) or previous decision. The employment of a minor child in violation of the statute is an instance of the first kind, and the failure to stop, look, and listen is the most common illustration of the second type. It is apparent that there must always be a causal relation between the act complained of and the injury sustained; otherwise liability does not follow.[4] We are not required in this case to determine the extent of this rule. It is apparent, however, that where an act is done in violation of a statute or ordinance, which act invades an interest protected by the statute or ordinance, there no inquiry can be permitted as to the element of foreseeability. The legislature in the one case and the court in the other has declared the standard for the protection of certain interests and in so doing has foreseen that the protection of those interests requires the actor to refrain from the act in question irrespective of the ability of the actor to foresee harm. Most laws regulating automobiles require the driver to drive at a comparatively slow speed by a school house for the protection of those using the

---

[4] *Steinkrause v. Eckstein,* 170 Wis. 487, 175 N. W. 988.

school house and the school grounds. A traveler passing by a school house in excess of the lawful rate of speed cannot exempt himself from liability on the ground that he did not or ought not to have foreseen some harm might result from his violation of the statute to a person using the school house and school grounds. Suppose, however, two travelers going in opposite directions collide in front of the school house at midnight, one traveling at less than the prescribed rate and one exceeding it. Are their relative rights in any way affected by the statute? It seems that the first question necessary to be determined is whether or not the interest of a traveler under such circumstances was intended to be protected by the law. If not, then the rights and liabilities of the respective parties are to be determined in accordance with other principles of law. In many cases the element of foreseeability, that is, that harm would result to some one from doing the act in question, is so apparent as to be merely a question of law; but where reasonable men may come to different conclusions in that respect from the facts offered and received in evidence, it remains a question for the jury.

It is considered that in instructing a jury a court is not required to make a complete statement in finished form of abstract or general principles of the law of negligence. It is doubtful whether an accurate, inclusive, exclusive, universal definition of negligence can be framed. If it were framed, no doubt it would be so abstract and refined as to be beyond the understanding of jurors. An instruction should be held sufficient in law if, as applied to the facts of the particular case in which the instruction is given, it affords the jury such a knowledge of the law as will enable it in that case to reach a just result. In homicide cases all of the instructions that are suitable to all kinds and degrees of homicide are not given,—only those which are applicable to the situations disclosed by the evidence. There must necessarily be some discrimination in negligence cases. While all negligence

cases have certain common factors, they are not by any means alike.

If it be kept in mind that foreseeability under our law as it now stands applies only to the question of negligence or the failure to exercise ordinary care, and not to limit the liability for the consequences of the wrongful act, much confusion should be done away with. The use of the objectionable term "proximate cause" may be avoided by using the term "legal cause," or "cause," or perhaps "substantial factor," if the proper meaning be attributed to whatever term is used. Proximate cause, legal cause, and substantial factor all cease to operate in the presence of a responsible intervening cause as that term is defined in the law. None of these terms are self-defining or self-limiting nor are any of them synonymous with physical causation. They are legal concepts and must be thought of and treated as such. When proximate cause is distinguished from physical causation, former statements of this court that foreseeability was a limitation upon proximate cause, were not so wrong and illogical as they appeared to be upon their face. We fully realize the problems with which trial courts are faced. Neither this court nor the trial court should for the sake of peace of mind cease their efforts to discover a better statement of the rule or at least a statement of the rule more understandable and applicable to certain classes of cases. Without saying or intimating that in a particular case the giving of an instruction in the language of the *Hamus Case* would be prejudicial error, we suggest the following would be a more accurate presentation of the law:

Every person is negligent when, without intending to do any wrong, he does such an act or omits to take such a precaution that under the circumstances present he, as an ordinarily prudent person, ought reasonably to foresee that he will thereby expose the interests of another to an unreasonable risk of harm. In determining whether his conduct

will subject the interests of another to an unreasonable risk of harm, a person is required to take into account such of the surrounding circumstances as would be taken into account by a reasonably prudent person and possess such knowledge as is possessed by an ordinarily reasonable person and to use such judgment and discretion as is exercised by persons of reasonable intelligence and judgment under the same or similar circumstances.

This instruction of course would not apply where the actor was a child or an insane person. If the actor in a particular case in fact has superior perception or possesses superior knowledge, he is required to exercise his superior powers in determining whether or not his conduct involves an unreasonable risk of injury to the interests of another, so the instruction would not be applicable to such a case. Restatement of the Law of Torts, American Law Institute, sec. 170. As already pointed out, it would not apply in cases where if it be found that the act complained of was performed, it would, under the circumstances, be negligent as a matter of law. No claim is made for perfection of literary form. We have expanded the statement somewhat in order to make it more readily comprehensible to persons not familiar with legal terms.

*By the Court.*—Judgment reversed, and cause remanded with directions for further proceedings as indicated in the opinion (page 228).

Fowler, J. (*concurring*). I concur with the disposition of the case made by the court, and for the most part with the views expressed in the opinion. However, with two statements made in the opinion I do not agree and shall express my individual views.

Before entering upon the discussion of the points in difference, I will say that I agree with the opinion of the court that the definition of negligence given in *Hamus v. Weber,*

199 Wis. 320, 226 N. W. 392, does not apply to every situation. If A. were driving his automobile with due care along a street and a child should dash out between two automobiles parked at the side, and A. could not avoid striking and seriously injuring or killing the child without turning to the right into a parked car, he would not be negligent in so doing although he would and should foresee that so turning would result in injury to the owner of the parked car. The *Hamus Case* definition would make him negligent. But the emergency takes A.'s act out of the field of negligence and makes his collision with the parked car an unavoidable accident. A.'s duty would be not to avoid injury to the parked car but to avoid the more serious injury to the child. As some injury would necessarily result from his conduct, his duty would be to take the course that would result in the less serious consequences. If he took such action in the emergency as to him seemed likely to cause the less injury, he would be free from fault. But if the definition of negligence in the *Hamus Case* had been prefaced with the statement "under the circumstances here existing" or the like, the statement there made would have been strictly correct because limited to the particular case. A trial judge is happily not required to state all the law there is on a subject in any one case, or so to state the law on a subject in any one case that it will apply to every conceivable case. If he applies the law correctly to the situation directly involved he has done all that is required.

The first statement in the opinion of the court to which I referred is: "The defect in the instruction approved in the *Hamus Case* is that it indicates no standard by which the conduct of the defendant is to be measured." To me it seems clear that the instruction does give a standard much more easy of application than that of the conduct of the great mass of mankind, or the conduct of the man of ordi-

nary care and prudence. Except when the standard has been fixed by legislative act or rule of court-made law, we really apply the standard given in the *Hamus Case* to determine whether the defendant has done as the man of ordinary prudence or the great mass of mankind would have done in a given situation. We do not at all consider what persons actually have done in like situations. We base our conclusion whether from the circumstances the great mass of men or the man of ordinary prudence would· have done as did the defendant, on whether the defendant should or should not have foreseen—on whether the ordinary person would or would not reasonably have foreseen—that some harm to another was likely to result from the act or omission involved. We reason that the defendant did not use ordinary care, that he did not do as the mass of mankind ordinarily do, because his act was dangerous and he should have foreseen the danger and not done the act. Thus it seems to me that the *Hamus Case* rule not only furnishes a standard of measurement of the defendant's conduct, but that it furnishes the one that the jury actually applies in determining the question of ordinary care under the definition of it commonly given.

The other statement in the opinion of the court to which I referred is that: "The instruction given in the *Hamus Case* confuses foreseeability as applied to negligence with foreseeability as applied to the liability for the consequences of a negligent act." This statement goes upon the assumption that the instruction in the *Hamus Case* states or implies that one is not negligent unless an ordinarily intelligent and prudent person would foresee all the natural consequences of his act, whereas it is only necessary that such person would foresee some harm. That the essentials of negligence are as indicated is correct. But the *Hamus Case* instruction does not state or imply to the contrary. The inference

that it does so state or imply arises from the statement in the instruction that "He [the defendant] is in duty bound to foresee all such natural consequences of his conduct *as an ordinarily prudent and intelligent person would ordinarily foresee under the then present circumstances.*" This merely states that the defendant is bound to foresee what—the things which, the natural consequences which—an ordinarily intelligent and prudent person would foresee. It does not state or imply that he must foresee or that an ordinarily intelligent and prudent person would foresee all the natural consequences. The point is that the defendant must foresee that some injury would naturally result if an ordinarily intelligent and prudent person would so foresee, and that in judging whether he should have foreseen some injury it is to be considered that he should have foreseen all consequences that an ordinarily intelligent and prudent person would have foreseen.

The method of submission used in the *Hamus Case* was adopted by the learned circuit judge who presided at the trial in an effort to get away from the stereotyped method of submitting negligence cases with which this court had recently expressed dissatisfaction in the case of *Berrafato v. Exner,* 194 Wis. 149, 156, 216 N. W. 165. It was the result of many years' experience as a trial judge and much thought. In my judgment, based upon long experience as a trial judge, it worked a distinct improvement. My experience with a similar method of submission convinced me of its superiority over the method in common use. We should aid so to simplify and clarify the submission of issues as best to enable the jury to understand them. It is in my opinion not advisable to revert to the method of submission formerly uniformly used which required the fact of causation to be so submitted as to associate the idea of physical causation with that of anticipation of injury with which it has no logical or rational connection and which made the

idea of "proximate cause" so perplexing and misleading to juries. The issue of negligence to my mind is a very simple issue in the ordinary case. The elements of negligence are in my view stated in the simplest way and in a way as logically correct as any ever suggested, in the opening chapters of Shearman & Redfield on Negligence. The elements of negligence are there stated in sec. 5, substantially as follows: There must exist in every negligence case five things: (1) A legal duty to use care. (2) Breach of that duty. (3) Absence of intent to do wrong. (4) Injury to the plaintiff. (5) Causation, by which is meant merely the existence of the relation of cause and effect between the breach of duty and the injury. As to (3), it may be omitted on framing a verdict or instructing a jury in the ordinary case as intent to do injury is not an issue except where gross negligence is involved. As to (4), that may also be omitted as ordinarily that injury was done is not in issue. As to (1), whether the defendant owed the duty of care is a question of law. This leaves in the ordinary case only two questions of ultimate fact to be considered by the jury—whether the defendant exercised proper care, and causation. These are covered in skeleton by the questions: (1) Did the defendant fail to use due care? And if Yes, (2) Did his such failure cause the plaintiff's injuries? Instruction in connection with (1) may be in substance: "Under situations such as are here involved a person fails to use due care when he does an act," etc., as stated in the *Hamus Case* or as stated at the close of the opinion of the court, if that be preferred. In this there is no general definition of negligence for lawyers to haggle about. As said in sec. 1 of Shearman & Redfield on Negligence: "Many definitions of negligence have been attempted, none of which appears quite satisfactory, as no one of them has proved satisfactory to the framer of any other." The definition suggested in the opinion of the court is doubtless as exact as any and more in

accord with the definition of negligence quoted in the' opinion from the Restatement of the Law than that given in the *Hamus Case*. But whichever statement is used in instructing relative to due care, or ordinary care if that term be preferred, in connection with the skeleton form above suggested, I see no reason to lumber the instruction up with ideas about intention of wrongdoing or protected interests, with neither of which the jury is concerned.

The above suggestion relative to submission of the issue of negligence has been made in the fear that although the treatment of the subject of negligence in the very able, exhaustive, and carefully prepared opinion of the court be in all respects correct, it will hardly aid the trial judge in his submission of the simple issue of negligence as it arises in the every-day case. Attempt to apply many of the ideas expressed in the opinion in submitting the ordinary case would likely lead to "confusion worse confounded" than it is in submitting cases under the "proximate cause" idea so long adhered to by this court as the only permissible method of submission.