James B. SMITH, Plaintiff-Appellant,

v.

COUNTY OF MILWAUKEE, Defendant-Respondent,

Emmitt B. HUSTON, Jr. and Blue Cross & Blue Shield United of Wisconsin, Defendants.

Supreme Court

*No. 89-0876. Argued September 5, 1990.—Decided June 7, 1991.*

(Also reported in 470 N.W.2d 274.)

For the plaintiff-appellant there was a brief (in the court of appeals) by *Diane L. Houk* and *Jacobson, O'Dess & Krings, S.C.,* Milwaukee and oral argument by *Thomas M. Jacobson.*

For the defendant-respondent there was a brief (in the court of appeals) and oral argument by *Robert E. Andrews,* corporation counsel.

CALLOW, WILLIAM G., J.   This case is before this court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats. The plaintiff-appellant James B. Smith (Smith) appeals from a summary judgment of the Milwaukee county circuit court, Judge Michael P. Sullivan. In its judgment, the circuit court dismissed Smith's complaint against the county of Milwaukee (County) on the ground that the County did not owe a duty to Smith.

Smith, was seriously injured as a result of being struck by the defendant Huston's car. Huston was driving at an excessive speed and had earlier been pursued by a Milwaukee county deputy sheriff. Smith appeals on one issue: Did the County owe him a duty of due care? We do not reach this issue, as we conclude that the facts clearly show that the automobile chase had ended prior to when Smith was injured.

The relevant facts follow. At approximately 9:00 p.m. on April 2, 1985, Milwaukee county deputy sheriff Charles Franklin (Franklin), while driving southbound on Interstate Highway 43 in a Milwaukee county sheriff's squad car, saw a car driven by Emmitt B. Huston,

Jr., pass him in the median distress lane and strike the median barrier several times.

Deputy Franklin attempted to stop Huston on southbound I-43 in the vicinity of North Avenue by pulling behind Huston's vehicle and activating the squad car's warning light and siren. Huston left the expressway at Fourth Street and came to a stop at the intersection of Fourth Street and McKinley Avenue. Deputy Franklin stopped his squad car behind Huston's car, left his squad car, and approached Huston's car on foot. As he did so, Huston sped off northbound on Fourth Street.

Deputy Franklin, traveling at a high rate of speed, pursued Huston northbound on Fourth Street. Huston attempted to elude Deputy Franklin at speeds in excess of 80 miles an hour, without slowing down for traffic signals and stop signs. Huston continued northbound on Fourth Street, finally eluding Deputy Franklin in approximately the 2300 block of Fourth Street.[1]

---

[1]The record contains conflicting evidence about exactly where on Fourth Street Huston eluded Deputy Franklin. The dissent indicates that Huston eluded Franklin in approximately the 2600 block of Fourth Street (dissenting opinion at 350, 470 N.W.2d at 278). This is based, presumably, on Deputy Franklin's police report of the incident in which he stated that he lost sight of Huston's vehicle at "approximately the 2600 block of North 4th Street." However, other evidence in the record indicates that Franklin lost visual contact with Huston's car by the time he reached North Avenue. In his deposition he stated that he did not see Huston's car when he crossed North Avenue. One of the officers in a city of Milwaukee police van testified that the 2300 block of Fourth Street was north of North Avenue and he did not see Deputy Franklin's vehicle coming from the south at the time he chased Huston's car in the police van. This testimony leads to the inescapable conclusion that Franklin lost visual contact with Huston's vehicle at or before North Avenue, which begins the 2300 block of Fourth Street.

A short time later, two police officers in a city of Milwaukee police van observed Huston drive through the intersection of Fourth Street and North Avenue at an excessive speed. The city police officers activated their vehicle's red light and siren and turned northbound on Fourth Street to follow Huston. In the 2800 block of Fourth Street, Huston struck the rear of a car driven by Smith, as Smith was entering his driveway. Smith was seriously injured as a result of the accident.

Deputy Franklin first learned of the crash and its location on his police radio. He arrived at the scene shortly thereafter. Franklin issued citations to Huston for driving a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats., and for fleeing from an officer, contrary to sec. 346.04(3), Stats. A blood sample taken at the hospital revealed Huston's blood alcohol content to be .243 percent.

Smith sued Milwaukee county, the city of Milwaukee and Huston for the injuries Smith suffered when Huston struck his car. The original complaints against the County and the city of Milwaukee were subsequently dismissed on Smith's motion, because the Notice of Claim filed with the City was defective. Smith refiled his complaint against the County, and alleged that Deputy Franklin, as an employee and agent of the County, "did negligently chase and pursue the defendant, Emmitt B. Huston, Jr., . . . at a rate of speed that was unsafe and in reckless disregard for the safety of other citizens." The complaint also alleged that the conduct of Deputy Franklin was the direct and proximate cause of Smith's injuries.

█

In reviewing the grant of a summary judgment motion, we are governed by the standards articulated in sec. 802.08(2), Stats., and apply the standards set forth

in the statute as the circuit court applied them. *Green Springs Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If a claim for relief is stated, summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2); *see also Green Springs Farms,* 136 Wis. 2d at 315.

We conclude that summary judgment in this case was appropriate, although we do not reach the question of whether the County owed Smith a duty of due care, as did the circuit court. Based on our examination of the pleadings, depositions, answers to interrogatories, admissions and affidavits, we determine that there are no genuine issues of material fact[2] to resolve at trial, because at the time of Smith's injury, Deputy Franklin's pursuit of Huston had ended. Because Franklin was no longer pursuing Huston, the County has presented a defense which defeats Smith's claim. *See Grams,* 97 Wis. 2d at 338.

Based on our review of the pleadings, depositions, answers to interrogatories, admissions and affidavits, the following facts are undisputed: (1) the accident occurred after Deputy Franklin had lost view of Huston and had abandoned the pursuit of Huston; (2) before the accident occurred, police officers in a city of Milwaukee van had observed the Huston vehicle traveling at a high rate of speed, and independent of the original chase by

---

[2]For a discussion of summary judgment motions in general and under what circumstances they should be granted, *see Grams v. Boss,* 97 Wis. 2d 332, 337–39, 296 Wis. 2d 473 (1980); *Heck & Paetow Claims Service, Inc. v. Heck,* 93 Wis. 2d 349, 355–56, 286 N.W.2d 831 (1980).

Deputy Franklin, initiated a new pursuit; (3) the accident occurred a significant distance (up to one mile) from the location where Deputy Franklin abandoned the pursuit; and (4) Deputy Franklin did not see the accident occur, but heard about it on his radio. Based on this undisputed evidence, it is clear that Deputy Franklin was not pursuing Huston at the time of the accident.

Additionally, although Huston had a blood alcohol content of .243 percent at the time of the accident, and is therefore less credible, he stated at his deposition that he did not recall being pursued by a sheriff's vehicle or a city police vehicle. Under the circumstances described above, the chase, insofar as it involved Deputy Franklin and the county of Milwaukee, was over at the time the accident occurred. Accordingly, because the pursuit was not in progress, we have no occasion to address what duty, if any, Deputy Franklin and the county of Milwaukee might have owed James Smith, a third party who was struck by Huston, not by Deputy Franklin.

Smith argued in his brief in opposition to Milwaukee county's summary judgment motion that summary judgment was improper in this case because there were material facts in dispute: (1) whether Huston was aware that he was being pursued by Deputy Franklin; (2) whether the manner in which Deputy Franklin pursued Huston caused Huston to operate his vehicle negligently; and (3) whether Huston would have struck Smith if he had not been pursued by Franklin at a high rate of speed.

Although these facts may be disputed, we conclude that they are not material facts. *See Ervin v. City of Kenosha,* 159 Wis. 2d 464, 480, 464 N.W.2d 654 (1991). The controlling legal issue is whether Deputy Franklin was pursuing Huston at the time Huston's car struck Smith, and these disputed facts are not material to that

issue. *See Huckstorf v. Vince L. Schneider Enterprises,* 41 Wis. 2d 45, 49, 163 N.W.2d 190 (1968).

The pleadings, depositions, answers to interrogatories, admissions and affidavits reflect that Deputy Franklin was a significant distance from the scene of the accident when Huston struck Smith. He was not in visual contact with Huston, and was aware of the accident only because he had heard about it on his radio. Although Huston may have been pursued by a city of Milwaukee van at the time of the accident, the accident was unrelated to the conduct of Deputy Franklin. Accordingly, we do not have occasion to address what duty, if any, Deputy Franklin or the County had to a third party who was injured when struck by a vehicle other than a pursuing emergency vehicle. For this reason, we affirm the circuit court's grant of summary judgment in favor of the County.

*By the Court.*—The judgment of the circuit court for Milwaukee county is affirmed.

HEFFERNAN, CHIEF JUSTICE (dissenting). I dissent from the decision of the majority, primarily because it fails to follow the methodology for the resolution of negligence cases that has been accepted by this court for almost sixty years. Basically, the error of the majority is to ignore the omnipresent legal premise that there is always a duty of reasonable care under the circumstances.

A court, particularly this court, cannot say it does not reach the question of whether Milwaukee county had a duty to the person who was eventually injured. Duty of ordinary care exists in every case. The question is: Does the breach of that duty result in liability? The majority opinion may well correctly anticipate the eventual no-

liability result in this case; but to reach that conclusion, the majority assumes facts that are properly reserved for the trier of fact. Accordingly, I would reverse and remand for further proceedings consistent with this court's standard negligence analysis as set forth in the opinion which follows—an opinion which I believe reflects the only approach that is permissible under well established Wisconsin negligence law.

\* \* \*

This case is before the court on certification of the court of appeals. Accordingly, the court is reviewing the judgment of the circuit court for Milwaukee county, Michael P. Sullivan, Judge, which granted summary judgment dismissing the complaint of James B. Smith against the County of Milwaukee. It dismissed the complaint of Smith on the sole ground that neither the County of Milwaukee nor its police officers had a duty in respect to Smith, who was injured when he was struck by a vehicle driven by Emmitt B. Huston, a drunken driver, that had at an earlier time been pursued by Milwaukee County Deputy Sheriff Charles Franklin. I would reverse because I conclude that sec. 346.03, Stats., which delineates the responsibility of the driver of an emergency vehicle when in pursuit of a suspected law violator, places upon the driver the duty of ordinary care under the circumstances for the safety of all persons. This duty is identical to the duty to avoid negligence (*i.e.*, the duty of care) that is placed upon all persons. Here, however, the statute specifically contemplates that negligence shall be judged by the special circumstances that an emergency chase is in progress and that certain enumerated rules of the road, the violation of which are usually to be considered to be negligence per se in respect to an

ordinary citizen, are not to be applied by that standard to an operator of an authorized emergency vehicle.[1]

[1]Section 346.03, Stats., provides:

**346.03 Applicability of rules of the road to authorized emergency vehicles. (1)** The operator of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions stated in subs. (2) to (5).

**(2)** The operator of an authorized emergency vehicle may:

(a) Stop, stand or park, irrespective of the provisions of this chapter;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the speed limit;

(d) Disregard regulations governing direction of movement or turning in specified directions.

**(3)** The exemption granted the operator of an authorized emergency vehicle by sub. (2)(a) applies only when the operator of the vehicle is given visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating. The exemptions granted by sub. (2)(b), (c) and (d) apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in sub. (4).

**(4)** A law enforcement officer operating a police vehicle shall otherwise comply with the requirements of sub. (3) relative to the giving of audible and visual signals but may exceed the speed limit without giving audible and visual signal under the following circumstances:

(a) If the officer is obtaining evidence of a speed violation.

(b) If the officer is responding to a call which the officer reasonably believes involves a felony in progress and the officer reasonably believes any of the following:

1. Knowledge of the officer's presence may endanger the safety of a victim or other person.

2. Knowledge of the officer's presence may cause the suspected violator to evade apprehension.

3. Knowledge of the officer's presence may cause the suspected

The facts are these:

The plaintiff, James Smith, was seriously injured following a high speed chase initiated by a Milwaukee county deputy sheriff. At approximately 9:00 p.m. on April 2, 1985, Milwaukee County Deputy Sheriff Charles Franklin, while driving southbound on I-43 in a Milwaukee county sheriff's squad car, saw a vehicle driven by Emmitt B. Huston, Jr., pass him in the median distress lane and strike the median barrier several times.

Deputy Franklin attempted to stop Huston on southbound I-43 in the vicinity of North Avenue by pulling behind Huston's vehicle and activating the squad car's warning light and siren. The Huston vehicle left the expressway at Fourth Street and came to a stop northbound at Fourth Street and McKinley Avenue. Deputy Franklin stopped his vehicle behind Huston's vehicle,

---

violator to destroy evidence of a suspected felony or may otherwise result in the loss of evidence of a suspected felony.

4. Knowledge of the officer's presence may cause the suspected violator to cease the commission of a suspected felony before the officer obtains sufficient evidence to establish grounds for arrest.

(5) The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others.

(6) Every law enforcement agency which uses authorized emergency vehicles shall provide written guidelines for its officers and employes regarding exceeding speed limits under the circumstances specified in sub. (4) and when otherwise in pursuit of actual or suspected violators. The guidelines shall consider, among other factors, road conditions, density of population, severity of crime and necessity of pursuit by vehicle. The guidelines are not subject to requirements for rules under ch. 227.

It should be noted that sub. (6) did not become effective until August 1, 1987. Hence, at the time of the accident, its provisions did not mandate Milwaukee County to provide written guidelines for its officers and employees.

left the squad car, and approached Huston's vehicle on foot from the rear. As he did so, Huston sped off northbound on Fourth Street.

Deputy Franklin, traveling at a high rate of speed, pursued Huston northbound on Fourth Street. Huston attempted to elude Deputy Franklin in the vicinity of Garfield Avenue and Third Street, then to Brown Street and back to Fourth Street northbound, all at a high rate of speed, while ignoring traffic signals and stop signs. Huston continued northbound on Fourth Street finally eluding Deputy Franklin in approximately the 2600 block of Fourth Street, where Franklin lost visual contact with the Huston vehicle.

A short time later, two police officers in a City of Milwaukee police van observed the Huston automobile drive through the intersection of Fourth Street and North Avenue at an excessive speed. The city police officers activated their vehicle's red light and siren and turned northbound on Fourth Street to follow Huston. In the 2800 block of North Fourth Street, Huston struck the rear of a vehicle driven by the plaintiff, James B. Smith, as Smith was entering his driveway. Smith was seriously injured.

Deputy Franklin first learned of the crash and its location on his police radio. He came upon the scene shortly thereafter.

Plaintiff sued Milwaukee county, the City of Milwaukee, and Emmitt B. Huston for the injuries he suffered in the collision of his vehicle and Huston's vehicle as a result of the pursuit.[2] The complaint against the County alleged that Deputy Franklin "did negligently chase and pursue the defendant, Emmitt B. Huston, Jr. . . . at a rate of speed that was unsafe and in reckless

---

[2]The complaint against the City of Milwaukee has been dismissed.

disregard for the safety of other citizens . . .." The complaint also alleged that conduct of Deputy Franklin was the cause of Smith's injuries.

Milwaukee county moved for summary judgment based upon the pleadings, affidavits, and concessions of the parties. Its principal argument was simply that no duty was owed to Smith by the operator of the Milwaukee county emergency vehicle. It also argued that under the facts as a matter of law the conduct of Deputy Franklin could not have been the proximate cause of Smith's injury.[3]

The trial judge concluded that were there a duty of care imposed upon Franklin, there would be disputed fact questions that needed resolution.

Judge Sullivan, in orally granting the county's motion for summary judgment, stated:

> It depends upon how narrowly or how broadly you want to read that statute [sec. 346.03(5)], but I think it's a pretty clear statement, clear enough for me to conclude this is a question of duty. I agree with you Miss Houk, if there is a duty on this police officer or a law enforcement officer to this third party, then there are questions of fact in this case that would preclude summary judgment. I agree with you. However, I think that I must resolve the duty question adverse to your client, and, therefore, grant summary judgment.

Judge Michael P. Sullivan's order for summary judgment provided: "2. Defendant, County of Milwau-

---

[3]This argument was predicated upon the assumption that the chase had been broken off a distance from where the accident occurred and what happened was the result of independent or intervening causes that severed the consequences of any possible negligence by Franklin.

kee, did not owe a duty to plaintiff, James B. Smith . . .."

Following the entry of summary judgment plaintiff brought his appeal. The appeal was certified to this court and was accepted. The sole issue certified was whether sec. 346.03(5), Stats., created a duty, the breach of which could result in liability when the pursued vehicle collides with and causes injury to a third person.[4]

As the statements of the circuit judge at the hearing on summary judgment demonstrate, he reached his conclusion on the basis of his reading of sec. 346.03(5), Stats. His explication of his reasoning is not set forth at length, but it appears that he adopted the interpretation urged by the county:

> [A] police officer owes no duty to a third party unless—and this is where Chapter 346 comes in—unless the law enforcement officer himself is behaving or driving a vehicle in a wreckless .[sic] manner, and . . . if the officer . . . is directly involved in the accident . . ..[5]

---

[4]The issue as stated by the court of appeals was:

> Does the duty of due care contained in sec. 346.03(5), Stats., create liability on the part of the governmental entity employing a law enforcement officer who conducts a high-speed chase when the pursued vehicle collides with and causes injuries to a third person?

I do not use that formulation, because it is not my understanding that the court of appeals intended to imply that a duty of care in itself creates liability.

[5]The county's argument is tinctured by its coordinate and intertwined position that, with the chase broken off, there could be no "proximate" cause. This is, of course, not the same as there being no duty as a matter of law. It is clear that Judge Sullivan made his decision as a matter of law without regard to any factual issues.

Thus, addressing the only issue presented, the question is whether sec. 346.03(5), Stats., states a duty on a pursuing police officer, which under facts showing a breach of that duty, injury, cause in fact, proximate cause, including the policy factors that are implicated, could impose liability for injuries sustained by a third person who was struck not by the emergency vehicle but by the fleeing person.

It should be emphasized that the judicial policy issues that are a part of proximate cause which may obviate liability, despite an unbroken sequence of duty, breach, injury, and cause in fact, are not before the court because the basis of the certification was a legal question. The judge specifically found that, were there a duty, material issues of fact would be presented. It is the resolution of material facts that would enable a court in possession of those facts to conclude as a matter of judicial policy that there ought not be liability. Judge Sullivan specifically stated that he was not addressing proximate cause questions. In the process of concluding there was no duty, he stated, "if there is a duty, I think there are factual questions on the proximate cause issue." [6]

The only question before the court is: Under the common law and under sec. 346.03(5), Stats., was there a duty upon Deputy Franklin to a third party who was not struck by the pursuing vehicle? The answer is clearly "yes." That conclusion, of course, is not in itself determinative of liability.

I first address the statute which in pertinent part states that the exemptions from the presumption of negligence per se that would otherwise apply "do not relieve

---

[6]*Hass v. Chicago & North Western Ry Co.,* 48 Wis. 2d 321, 327, 179 N.W.2d 885 (1970), where it was emphasized that where factual connections are so attenuated, a full trial must precede the court's determination in respect to public policy.

such operator from the duty to drive with due regard under the circumstances for the safety of all persons . . .."

Thus, it is plain on the face of the statute that it is the legislatively declared policy that the driver of an emergency vehicle has a duty of care in respect to all persons. Obviously, this includes a duty to a person who may not have been directly injured, *i.e.*, by the striking by the police car, but whose injury was "caused" by the negligence of the officer. The statute could not be plainer in its imposition of this duty of ordinary care in respect to all persons.

The statute in a form substantially the same as it presently exists has been examined twice by this court to determine what duty of care is placed upon the driver of an emergency vehicle. The early case of *Suren v. Zuege,* 186 Wis. 264, 201 N.W. 722 (1925), involved a pursuit of a speeding motorist by a motorcycle officer. During the course of the chase, the officer collided with the rear of a vehicle that was proceeding at a lawful rate of speed. This court, in examining the then pertinent statute, sec. 85.16(3), which exempted an emergency vehicle in certain respects, stated:

> This statutory exemption, however, while rendering him immune from prosecution or preventing the application of the rule that such excess of speed may establish a *prima facie* presumption of negligence, does not absolve him from the duty to exercise that which, under those circumstances and conditions, is reasonable and ordinary care for the safety of others and himself.

186 Wis. at 267.

In *Suren* the court dismissed the plaintiff police officer's claim for damages because his injuries were

caused by his failure to exercise ordinary care in the circumstances of a police chase.

In *Montalto v. Fond du Lac County,* 272 Wis. 552, 76 N.W.2d 279 (1956), the court again addressed the statutes in respect to exemptions afforded to emergency vehicles. Section 85.40(5), analogous to the applicable statute in this case, in part provided in respect to speed exemptions:

> This provision shall not relieve the operator of an authorized emergency vehicle from the duty to operate with due regard for the safety of all persons using the highway . . ..

272 Wis. at 557.

The *Montalto* court concluded that the statute exempting the driver of the ambulance from the specific speed limits did not relieve the driver of the duty of exercising due care to prevent injury to others lawfully on the highway.

In each of these cases, the Wisconsin court considered the statute to be a restatement of the common law formulation of ordinary care under the circumstances.[7] The court has more recently stated that standard. In *Coffey v. Milwaukee,* 74 Wis. 2d 526, 537, 247 N.W.2d 132 (1976), the court cited with approval the formulation of *Antoniewicz v. Reszcynski,* 70 Wis. 2d 836, 857, 236 N.W.2d 1 (1975):

> ". . . By such standard of ordinary care, we mean the standard that is used in all other negligence

---

[7]*See* Richard G. Zevitz, *Police Civil Liability and the Law of High Speed Pursuit,* 70 Marq. L. Rev. 237 (1987), concluding that the statute states a common law negligence standard. This excellent article discusses numerous other aspects of high speed chases that are not pertinent to the present posture of this case but which would be helpful in the event there were a trial.

cases in Wisconsin. Typical of such formulations is that appearing in *Osborne v. Montgomery* (1931), 203 Wis. 223, 236, 234 N.W. 372. *See also: Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N.W.2d 29; *Schilling v. Stockel* (1965), 26 Wis. 2d 525, 133 N.W.2d 335. Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others. That test is to be applied at the negligence phase of the analysis to the world at large and not to the particular plaintiff. . . . [I]f the defendant has been negligent under that standard, the question is one of cause—substantial factor, *i.e.,* cause in fact, and proximate cause, which may include policy factors that may exclude liability in the particular circumstances . . .."

Accordingly, I consider this case in its present posture a mine-run negligence case to be considered and determined in the same manner as any other negligence case.[8]

The methodology of submission of "mine run" and "hard" cases was discussed as long ago as 1952 by Justice George Currie in *Pfeifer v. Standard Gateway Theater,* 262 Wis. 229, 55 N.W.2d 29 (1952). Justice Currie wrote:

> [I]n submitting the ordinary or "mine run" type of negligence case, the jury should be asked to determine whether the party charged with negligence

---

[8]I emphasize that the only question raised and discussed in the proceedings and the judgment appealed from is duty. The case, in addition to posing the usual negligence questions, may in a subsequent posture implicate questions of governmental employee immunity considered in the light of discretionary versus ministerial functions. *See Lister v. Board of Regents,* 72 Wis. 2d 282, 240 N.W.2d 610 (1976); *Pavlik v. Kinsey,* 81 Wis. 2d 42, 259 N.W.2d 709 (1977). *See* Zevitz, *supra,* pp. 259 ff.

should have reasonably anticipated some injury to the interests of others might result from the alleged negligent act . . ..

262 Wis. at 240.

Justice Currie went on to state:

> It would seem to be preferable to submit these hard cases to the jury in so far as determining the issues of negligence and causation in the same manner as in the ordinary case. If the jury does determine that there was negligence, and that such negligence was a substantial factor in producing the injury, it is then for the court to decide as a matter of law whether or not considerations of public policy require that there be no liability. As previously pointed out, this latter solution is the one advanced in *Osborne v. Montgomery, supra,* and we adhere thereto. It is also in accord with the views expressed by Professor Campbell in his article in 1938 Wisconsin Law Review, 402, and with Restatement, 2 Torts (1948 Supp.), p. 739, sec. 435, 2, comment *e,* thereunder.

262 Wis. at 240.

The basic philosophy first set forth with clarity in *Pfeifer* has been restated and amplified in subsequent opinions of this court. *Schilling v. Stockel,* 26 Wis. 2d 525, 113 N.W.2d 335 (1965); *Longberg v. H. L. Green Co.,* 15 Wis. 2d 505, 113 N.W.2d 129, 114 N.W.2d 435 (1962); *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956).

In *Coffey v. Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976) the court stated the general standard of care—the duty that is applicable in all cases: "Each individual is held, at the very least, to a standard of ordinary care in all activities." *Id.* at 537. In *A. E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483, 214 N.W.2d 764 (1974), we said that:

357

> The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act.

In *Schuster v. Altenberg,* 144 Wis. 2d 223, 237–38, 424 N.W.2d 159 (1988), the court's role of "duty" in a negligence analysis was restated as follows: "[A] no duty-no liability theory is misplaced in Wisconsin: a 'duty' exists when it is established that it was foreseeable that an act or omission to act may cause harm to someone."

The *Schuster* court went on to say, at 239, quoting the following language of *Walker v. Bignell,* 100 Wis. 2d 256, 264, 301 N.W.2d 447 (1981):

> Thus within the framework of a negligence case the particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.

Thus, it is clear that the operator of the Milwaukee county squad car had a duty of reasonable care under the circumstances and that he could be found negligent by a jury if his conduct foreseeably could cause harm to another, even though to an unforeseeable person or an unforeseeable event.

But as our cases since *Pfeifer* have emphasized over and over, the finding of the duty of due care breached, *i.e.,* the finding by the fact finder of negligence, does not automatically result in the imposition of liability.

The question of whether liability should be imposed in such a circumstance has been framed by this court in terms of "public policy" or, as was more accurately

stated in *Osborne v. Montgomery,* 203 Wis. 223, 237, 234 N.W. 372 (1931), "judicial policy."

In *Coffey, supra* at 540–41, the court recapitulated the procedure to be employed by a court where there is negligence, breach, and an unbroken sequence establishing cause in fact, and yet there remains the policy question whether liability ought to be imposed. The court said in *Coffey:*

> In *Hass v. Chicago & North Western Ry. Co.,* 48 Wis. 2d 321, 179 N.W.2d 885 (1970), this court held that the imposition of liability did not always flow from a finding of negligence and cause-in-fact, stating at p. 326:
>
>> ". . . However, negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of public policy."
>
> *See also: Howard v. Mt. Sinai Hospital, Inc.,* 63 Wis. 2d 515, 519, 520, 217 N.W.2d 383, 219 N.W.2d 576 (1974); *Padilla, supra,* 779; *Colla v. Mandella,* 1 Wis. 2d 594, 599, 85 N.W.2d 345 (1957); *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 240, 55 N.W.2d 29 (1952).
>
> The application of the public policy considerations is solely a function of the court. *Hass, supra,* 326; *Schilling v. Stockel,* 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965); *Colla, supra,* 599. Thus this court has held that even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The

injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *Dumer v. St. Michael's Hospital,* 69 Wis. 2d 766, 774, 233 N.W.2d 372 (1975); *Rieck v. Medical Protective Co.,* 64 Wis. 2d 514, 517, 219 N.W.2d 242 (1974); *Colla, supra,* 598, 599.

74 Wis. 2d at 540–41.

As *Coffey* points out, this court has occasionally decided the policy question of no liability on the basis of demurrer, but not when a full factual resolution of the cause is required.

In this case, the facts have not been resolved. The trial judge explicitly stated that, if there was a duty on Deputy Franklin in respect to the third party Smith, there were factual questions to be determined. Here, while I conclude that Franklin had a duty to exercise ordinary care under the circumstances, *i.e.,* the circumstance of a high speed pursuit of a person who was rather clearly violating the law of the road, there has been no determination that Franklin breached that duty, a duty that he owed to all the world, including Smith. Whether Franklin was negligent has not been decided. The question of negligence, except when a matter of law, is a question for a jury. Moreover, there may be evidence upon which a jury could find that the chase had terminated and whatever thereafter happened was so unrelated to Franklin's possible negligence as to not be a

cause in fact, or a substantial factor in the collision. A jury might possibly find that there was an intervening or superseding cause as the result of the pursuit by the vehicle of the City of Milwaukee or by reason of the independent negligence of Huston. Thus, the case is replete with factual problems that must be resolved by the finder of fact. Additionally, it must be recalled that the injury to Smith resulted from a lengthy sequence of events that culminated in the collision of the vehicle of the fleeing person, Huston, with the innocent Smith. While a jury, considering the facts, could find that the negligence of Franklin was the cause in fact of Smith's injuries, under those facts this is a "hard" case, as the term is used in *Pfeifer;* or as the court stated in *Coffey,* at 543, "The factual connections are so attenuated that a full trial should precede this court's determination of the policy considerations."

I would reverse the judgment in favor of Milwaukee county because the circuit court decided the case only on the ground of no duty. Hence, the subsequent fact questions that flow from the conclusion that, under sec. 346.03(5), Stats., there is a duty on the part of a driver of an emergency vehicle to all persons to exercise due care under the circumstances, were not addressed. I would reverse the summary judgment of the circuit court for Milwaukee county and remand for further proceedings.

\*  \*  \*

Because I believe this analysis requiring a reversal and remand to be the only acceptable one, I dissent from the mandate of the court.

I am authorized to state that Justice Shirley S. Abrahamson and Justice William A. Bablitch join in this dissent.